IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*Filed Under Seal*

| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
|---|---|---|
| v. | : | DATE FILED: _____ |
| MEHDI NIKPARVAR-FARD, a/k/a "Mehdi Armani" | : : | VIOLATION: 21 U.S.C. § 846 (conspiracy to distribute a controlled substance – 1 count) Notice of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

### BACKGROUND

1. From in or about January of 2013, to on or about August 29, 2017, defendant MEHDI NIKPARVAR-FARD, M.D., owned Advanced Urgent Care (AUC), a business with office locations in the Eastern District of Pennsylvania. During that time, defendant NIKPARVAR-FARD supervised all AUC employees and worked as a doctor at multiple AUC office locations.

2. AUC provided medical services to the public. The medical services include pain management, which often involved the prescription of controlled substances to individuals who visited AUC offices.

3. The Controlled Substances Act governs the manufacture, distribution, and dispensing of controlled substances in the United States. Under the Controlled Substances Act, there are five schedules of controlled substances - Schedules I, II, III, IV, and V. Controlled

substances are scheduled into these levels based upon their potential for abuse, among other things.

4. Oxycodone is a narcotic analgesic that is similar to morphine and is classified as a Schedule II controlled substance, sometimes prescribed under the brand name Oxycontin. Oxycodone is used to treat severe pain, and, even if taken only in prescribed amounts, can cause physical and psychological dependence. Oxycodone is used in pain relief drugs in varying strengths, including 5, 10, 15, 30, 40, 60, and 80 milligram amounts. For example, Percocet is manufactured by numerous pharmaceutical companies under the following brand names: Endocet, Roxicet, Roxilox and Tylox. Percocet, which contains either five or ten milligrams of oxycodone, is used to treat moderate to moderately severe pain, and contains two drugs, oxycodone and acetaminophen. Even if taken only in prescribed amounts, pills containing amounts as low as 5 milligrams of oxycodone can cause physical and psychological dependence.

5. As a controlled substance, all of the products containing oxycodone are classified by the Drug Enforcement Administration as Schedule II controlled substances, which mean that they cannot safely be used except under the supervision of a licensed medical practitioner. Title 21, United States Code, Section 353(b)(1)(A).

6. Title 21, United States Code, Section 841(a)(1), provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance." Title 21, United States Code, Section 829 provides an exception to this prohibition, permitting physicians or other authorized health professionals to distribute controlled substances pursuant to a prescription.

7. Title 21, United States Code, Section 802(10), provides that the term

2

"dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for delivery.

8. Title 21, United States Code, Section 821, provides that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations relating to the registration and control of the manufacture, distribution and dispensing of controlled substances."

9. Title 21, United States Code, Section 822 explains that controlled substances may only be prescribed, dispensed, or distributed by persons who are registered to do so with the Attorney General of the United States (with some exceptions, such as delivery persons). The Attorney General has delegated authority to register persons to the DEA.

10. The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides for a "prescription for a controlled substance to be effective [it] must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Act [Title 21, United States Code, Section 829] and the person issuing it as well as the person knowingly filling such a purported prescription, shall be subject to the penalties provided for violations of the law relating to controlled substances.

## THE CONSPIRACY TO UNLAWFULLY DISTRIBUTE OXYCODONE

11. From in or about May of 2014, to on or about July 9, 2015, in Philadelphia, Montgomeryville, and Willow Grove, in the Eastern District of Pennsylvania, and elsewhere, defendant

**MEHDI NIKPARVAR-FARD,**
**a/k/a MEHDI ARMANI,**

conspired and agreed with H.C., J.R., and others known to the grand jury, to knowingly and intentionally distribute and dispense a controlled substance outside the usual course of professional practice and not for a legitimate medical purpose, that is, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1),(b)(1)(C).

## MANNER AND MEANS

It was part of the conspiracy that:

12. H.C., a doctor who was an AUC employee, surrendered his DEA registration number on or about May 14, 2014. Once H.C. surrendered his DEA registration, he could no longer issue a legitimate prescription for controlled substances.

13. In or about May of 2014, H.C. told defendant MEHDI NIKPARVAR-FARD and J.R., an office manager employed at AUC, that he no longer had a valid DEA registration number.

14. In or about May of 2014, defendant MEHDI NIKPARVAR-FARD and J.R. proposed a scheme whereby H.C. would distribute controlled substances by using pre-signed prescriptions provided by other doctors and physician's assistants employed at AUC. H.C. would see pain management patients visiting AUC offices, and would use the pre-signed prescriptions to prescribe Schedule II controlled substances for those patients. The AUC patients

4

would not be examined by the doctor or physician's assistant who actually signed the prescriptions, but rather, by H.C., who was not authorized to issue a prescription for a Schedule II controlled substance because he lacked a valid DEA registration number.

15. H.C. accepted pre-signed prescriptions bearing the signature of defendant MEHDI NIKPARVAR-FARD, and bearing the signatures of other doctors and physician's assistants employed at AUC, and used them to prescribe Schedule II controlled substances for AUC patients.

16. H.C. accepted pre-signed prescriptions provided by J.R., and used them to prescribe Schedule II controlled substances for AUC patients.

17. Using the pre-signed prescriptions, H.C. prescribed Schedule II controlled substances, including Percocet, Oxycodone, Oxycontin, and Methadone.

All in violation of Title 21, United States Code, Section 846.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 21, United States Code, Section 846, set forth in this indictment, defendant

**MEHDI NIKPARVAR-FARD,**
**a/k/a MEHDI ARMANI,**

shall forfeit to the United States of America:

(a) any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense;

(b) any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offense.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____
FOREPERSON

*Christine E. Myers for*
**LOUIS D. LAPPEN**
**United States Attorney**