## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MEHDI NIKPARVAR-FARD** | : | **No. 18-101-1** |
| **a/k/a "Mehdi Armani"** | : | |

## MEMORANDUM

PRATTER, J.                                                                                    MAY 26, 2021

Mehdi Nikparvar-Fard wants to be released from pre-trial custody.  This is his fifth such request, which the Government again opposes.  He styles his emergency motion as one for reconsideration of the Court's Pre-trial Detention Order based on the COVID-19 pandemic, a medical condition that he contends places him at increased risk of harm if he were to contract the virus, and the length of his pre-trial detention.  For the reasons discussed below, the Emergency Motion is denied without prejudice.

### BACKGROUND

Defendant Nikparvar-Fard,[1] a medical doctor, is charged in a 5-count superseding indictment with maintaining a drug-involved premises, and aiding and abetting of the same, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2, and conspiring to unlawfully distribute oxycodone, in violation of 21 U.S.C. § 846.  Specifically, he is accused of using his medical practice to illegally distribute oxycodone and methadone.  All told, his four clinics wrote approximately 3,700 allegedly illegal prescriptions and provided a countless number of pills.  He faces a maximum of

---

[1]      Nikparvar-Fard legally changed his name to Medhi Armani in 2014.  As the Court has done in its prior Memoranda, it will refer to him only as Nikparvar-Fard, which is the name used in the indictment and in the defendant's motion and supplementing documentation.

100 years' imprisonment and a Federal Sentencing Guidelines range of imprisonment between 292 and 365 months. He also faces forfeiture of several properties, including his personal residence.

Initially, after the defendant's arrest in December 2018, the Government sought his temporary detention, which a magistrate judge granted. Shortly thereafter, the Government moved for detention. Following a detention hearing, the magistrate judge found that the defendant was a flight risk and entered a pretrial detention order.

Since his arrest, the defendant has challenged his pre-trial detention on several occasions.[2] The Court has held evidentiary hearings and reviewed extensive briefing to carefully consider the merits of the defendant's applications for release. The Court has denied the defendant's two earlier motions for reconsideration because, at each stage, he failed to provide evidence that would alter the Court's prior conclusions. In its July 11, 2019 Memorandum, the Court addressed at length the application of 18 U.S.C. § 3142(e)(1), (e)(3), and (g) to this defendant, along with the due process considerations to find that pre-trial detention was appropriate. The Court based its decision on evidence demonstrating the defendant's "unabashed disdain for authority and a total lack of respect for courts and law enforcement." Doc. No. 137 at 10.

The defendant then moved for reconsideration in April 2020, basing that motion on the COVID-19 pandemic and an asthma diagnosis. He did not present evidence to mitigate any of the Court's previous findings regarding his risk of flight or danger he posed to the community. The Government, in opposing the motion, emphasized that its case had "only grown stronger in recent months." The Government argued that since the defendant's last challenge to the detention order, it had disclosed to the defense the identities of cooperating co-defendants. This disclosure, the Government maintained, gave the defendant a motivation to retaliate against and to intimidate

---

[2]     The Court incorporates its July 11, 2019 and April 20, 2020 Memoranda setting forth the relevant background and procedural history. Doc. Nos. 137, 231.

these witnesses. The Court agreed, finding that the case against him "remains substantial." The Court's April 20, 2020 Memorandum then considered the impact of the COVID-19 pandemic insofar as it affected this defendant. In denying the motion, the Court found that his request, based on speculation about possible future events and conditions at the FDC, still insufficient to warrant release.

At each stage of these pre-trial proceedings, defendant has been ably represented by retained counsel, and—as the Court understands it—defendant has actively participated, at the very least, in the fashioning of the motions for release.

The defendant now challenges the pre-trial detention order a fifth time. His opening papers, filed in December 2020, again argue release is warranted because he suffers from asthma, which he maintains places him at increased risk of harm if he were to contract COVID-19. As part of his proposed bail package, he continues to propose pledging the equity interest in properties owned by "close family friends." Doc. No. 247-1 at 11. The Court has previously detailed its lack of confidence in defendant's proposed bail package, which, at the time, included pledged property owned by the friends of the defendant's wife, rather than property in which the defendant himself had an actual legal or equitable interest. And, although he initially offered to pledge $240,000 cash in an earlier set of proposed conditions, the defendant has since lowered that cash amount to only $50,000.

In a January 2021 hearing, the Court reminded the defendant that the Court was concerned that, by pledging the assets of third-party non-defendants, the defendant had no direct financial stake in his bail package. Much of the defendant's assets, including the family residence at 400 Fairview Road, were locked up in an irrevocable trust for the benefit of the defendant's children— who, at that time of the first use of that property as security for release, were both minors. This

3

March, the defendant submitted a further revised bail package that includes pledging the 400 Fairview Road residential property as collateral. The defendant represents that his son, who has since reached maturity, can now receive a distribution from the trust and post that real property as part of the proposed set of conditions.

The Government does not dispute that the defendant's son can pledge the Pennsylvania property as collateral or that the current equity in the property exceeds $1,000,000. The Government does, however, note its concern that, because the mortgage on the property was allegedly paid with criminally derived proceeds, the property is listed on the Notice of Forfeiture and subject to forfeiture. For this reason, the Government challenges whether 400 Fairview Road can provide adequate security to ensure the defendant's appearance at trial.

In his supplemental submissions, defendant also challenges the length of his pre-trial detention as violating due process. At this point, he has been confined for approximately 28 months, a lengthy period that has prompted the Court's concern. Due to the COVID-19 pandemic, his trial has been continued several times, and there is no reasonable expectation of an imminent trial date for reasons unrelated and unprompted by the presiding Court, the Government, or the defendant.

## LEGAL STANDARD

Eligibility for bail is governed by the Bail Reform Act. 18 U.S.C. §§ 3142 *et seq.* The Act requires "the pretrial release of a defendant prior to trial unless 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2015) (citing 18 U.S.C. § 3142(e)(1)). In determining whether any form of conditional release is

4

adequate to secure a defendant's appearance, the Court is guided by the factors set forth in 18 U.S.C. § 3142(g).

Once a judicial officer has determined that pre-trial detention is warranted under § 3142, a defendant may still seek review of that decision. 18 U.S.C. § 3145(b). "A determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds." *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986). The Court is obligated to act promptly when a defendant challenges a detention order. 18 U.S.C. § 3145(c).

## DISCUSSION

Defendant raises several challenges to his continued detention. He again disputes the pretrial detention order in light of the COVID-19 pandemic as well as a medical condition that he believes places him at increased risk of harm if he were to contract the virus. He also argues that confinement violates his constitutional right to due process. It is this latter point that does give the Court serious pause, even in light of the specific concerns about the Defendant and the proposed bail package.

## I.    Whether Defendant Has Rebutted the Court's Previous Factual Findings

The Court has now, on several occasions, expressed its concerns that evidence is needed to rebut the Court's prior factual findings.[3] The Bail Reform Act requires the Court to consider factors unique to the defendant, including the nature and circumstances of the offenses charged; the weight of the evidence against him; his history and characteristics; whether he was on

---

[3]      The Court's two prior memoranda denying the defendant's motions for release address in detail the statutory framework set forth in 18 U.S.C. § 3142. The Court first considered the rebuttable presumption of detention for this defendant in light of the nature of the charges against him, 18 U.S.C. § 3142(e)(3)(A), and the risk of flight. In its July 11, 2019 Memorandum, the Court analyzed each of the factors set forth in 18 U.S.C. § 3142(g) to determine whether there were any appropriate conditions of release, as well as due process considerations in light of relevant case law within this Circuit.

5

supervision at the time of the alleged conduct; his prior interactions with law enforcement and the court system; the nature and seriousness of the danger to any person or the community posed by his release; and the risk that the defendant may not appear for trial. 18 U.S.C. § 3142(g).

The Court has previously discussed at length the defendant's "history of undisguised antipathy to judicial processes." Doc. No. 137 at 13. Specifically, the defendant has, on several, albeit unrelated prior occasions, failed to appear in court, which led to multiple default judgments against him, and failed to comply with judicial processes, which forced the court to hold him in civil contempt—twice. Moreover, the defendant was convicted of retaliating against a federal marshal after he threatened the official while possessing a concealed weapon at the time that he made those threats. The context of that conduct is important, too. The officials were executing a bench warrant for the defendant's arrest after he was again found in contempt. The Court is also mindful that the defendant has allegedly threatened a former employee who was a witness in a state court proceeding. Similar to the nature of the threat made to the federal official, the defendant threatened to hire someone to shoot the witness in the head. Collectively, the Court found these events "paint a troubling picture of Dr. Nikparvar-Fard as someone who has (1) no regard for judicial process; (2) no respect for witnesses; and (3) no credibility as to his purported willingness to follow the Court's rules and orders." Doc. No. 137 at 12. All of this supported the defendant's pre-trial detention.

Since the Court made those findings, and despite the Court's repeated invitations to the parties, the Court has not been presented with new evidence to support a change in the Court's assessment of the defendant's demeanor. The defendant's *ipse dixit* declaration that he is not a flight risk is unavailing precisely because he has not presented any evidence in support of that

6

conclusion. At the conclusion of the recent April 28, 2021 hearing, the Court invited the defendant to present himself for the Court's assessment. The defendant has not yet actually done so.[4]

At least on the papers, the defendant has questioned whether the Court's prior factual findings about his disregard for court orders and judicial authority will serve as the proverbial albatross for the remainder of this case. People are capable of change. But the defendant has opted not to facilitate any such assessment of any supposed change. The Court will not speculate as to his demeanor, changed or otherwise, nor can it give the benefit of the doubt when all evidence points to the contrary. Other than the passage of time, as far as the record reflects, there has been no change from the circumstances that existed when the Court denied the defendant's prior motions for release.

## II.     Whether the COVID-19 Pandemic Warrants Temporary Release

In certain limited circumstances, a medical condition may constitute a "compelling reason" to permit the temporary release of an individual. 18 U.S.C. § 3142(i). Temporary release is considered only after a judicial determination has been made that pretrial detention is warranted. In that case, the defendant bears the burden to establish that temporary release is warranted. *United States v. Harris*, No. CR 18-315-1, 2021 WL 602402, at *1 (E.D. Pa. Feb. 16, 2021). The Court must weigh the reasons for the release against "the risks that were previously identified and resulted in an order of detention." *Id.* (internal citation omitted). In the dynamic of this case, the defendant has not rebutted the presumption that he remains a flight risk and poses a danger to the community. *See* Section I, *supra*.

---

[4]     Defendant may indeed still make it clear that he wants to and will do so. If that comes to pass, the Court remains open to receipt of yet more evidence, but it is not the Court's obligation to entice Defendant to appear again on this issue. Nor is it the Court's obligation to keep its schedule perpetually open for Defendant's convenience.

The mere existence of COVID-19 does not provide a compelling reason to justify pre-trial release. The Court is mindful of the defendant's concerns about possible complications if he were to contract the disease. But a generalized fear of contracting the virus while detained is insufficient. *Cf. United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding that the mere existence of COVID-19 does not independently justify compassionate release). And the restrictions imposed at the FDC were designed to protect inmates and to prevent the transmission of the virus. *See United States v. Golden*, No. CR 19-00545, 2021 WL 51459, at *5 (E.D. Pa. Jan. 6, 2021). Indeed, as of this writing, the Bureau of Prisons reports that there are zero cases of COVID-19 at FDC Philadelphia among the inmate population.[5] (For good measure, no staff members are currently positive for the virus either.)

Nor is it clear that the defendant has a qualifying problematic medical condition as recognized by the Centers for Disease Control and Prevention (CDC). The CDC has deemed certain people with specific underlying medical conditions and the elderly to be at a heightened risk of severe illness or death.[6] Relevant here, the CDC guidelines list "moderate to severe asthma" as placing an individual at increased risk of harm if that individual contracted the disease. Although this Court is not bound by the CDC's guidelines, it, as well as many other district courts, treats the CDC guidance as reliably informative. *See United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (listing cases).

The defendant does not establish that his alleged asthma meets the clinical definition of "moderate to severe." Instead, his medical records from the FDC state that he "denies cough,

---

[5]     The data is current as of May 20, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.

[6]     *See People at Increased Risk*, Centers for Disease Control and Prevention (Apr. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited May 24, 2021).

wheezing, chest pain . . . difficulty breathing, dizziness, or other respiratory complaint." To the extent he uses an inhaler daily, he reported that his use was out of habit, rather than medical necessity. All told, the defendant's condition appears well-controlled with the medication supplied to him and does not meet the high bar to warrant release from detention. *Harris*, 2021 WL 602402, at \*2 (collecting cases denying motions for pretrial release based on defendant's mild asthma even considering the COVID-19 pandemic).

On these facts, the Court cannot find that the defendant's asthma and the lack of any COVID-19-positive cases within the FDC constitute a "compelling reason" to justify temporary release.

## III.    Whether Continued Confinement Violates Due Process

But the Court's inquiry does not end here. Indeed, the most compelling argument that the defendant raises is that the length of his confinement has violated his due process rights. In fact, the length of confinement was an issue that the Court raised and required the parties to address. At this point, the defendant has been detained for over 28 months. Despite this Court's efforts to notice this trial to begin in June 2021, the parties are well aware of the institutional pressures that will frustrate that effort. Realistically, the defendant will be detained for over 30 months before there is any adjudication as to his guilt by trial.

There is no bright-line time frame in which the length of pre-trial detention matures into a constitutional violation. *United States v. Salerno*, 481 U.S. 739, 748 n.4 (1987). Nor is length of time alone dispositive. That said, "at some point due process may require a release from pretrial detention." *Accetturo*, 783 F.2d at 388. That is because the length of confinement may descend into punitive detention. *Salerno*, 481 U.S. at 747. The tipping point between permissive

9

administrative detention and unconstitutional punitive detention is made on a case-by-case basis,

accounting for "factors relevant in the initial detention decision." *Accetturo*, 783 F.2d at 388.

Because due process is a flexible concept not befitting "arbitrary line" drawing, the Third

Circuit Court of Appeals has articulated several factors to guide the Court's inquiry.

> [D]ue process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.

*Accetturo*, 783 F.2d at 388. Many of the *Accetturo* factors overlap with those found in 18 U.S.C.

§ 3142(g). And the Court has previously weighed them in addressing the defendant's due process

argument, finding that they support the Government's position. Doc. No. 137.

At this stage, the length of detention is the only factor that works any real change to the

Court's prior analysis. It is, to acknowledge the Government's description, this solemn legal issue

that the Court will address here.

This case was initially noticed for a trial in April 2020. The defendant appropriately does

not try to assign blame to the Government for the series of continuances. To be clear, the

Government did not request any continuances and, as recently as the April 28, 2021 hearing, states

that it is ready to go to trial. The judicial system's responses to a public health crisis, including

the temporary suspension of criminal jury trials in the Eastern District of Pennsylvania, is not

attributable to either party. *See, e.g.*, *United States of Am. v. Brandon Jermaine Miles*, No. 19-

20720, 2021 WL 1388162, at *3 (E.D. Mich. Apr. 13, 2021) ("While regrettable, the delays to

[Defendant's] trial caused by the global pandemic—which has forced the entire judicial system to

adapt in unprecedented ways—are not the government's responsibility."); *United States v.*

10

*Jackson*, No. 19-CR-356 (ARR), 2021 WL 753307, at *3 (E.D.N.Y. Feb. 26, 2021) ("The delay in this case is due solely to the temporary suspension of trials in response to the COVID-19 pandemic.").

Although the Court appreciates that there is no "blame" to be assigned for the onset of the pandemic and the resulting changes to trial proceedings, the fact remains that the defendant has not yet actually demanded a trial. He has also not affirmatively requested continuances—such delays were a result of the various standing orders over which this Court has no control. But the defendant has not sought in any sense to expedite the proceedings, even if such a request were only to be made to preserve the record. Instead, both parties appear to be content to take a passive approach rather than to try to actively advance the proceedings in this case.

The Court's July 11, 2019 Memorandum referred to several cases in which pretrial detention periods meeting or exceeding 28 months were held not to violate due process. Doc. No. 137 at 26. Each of these cases was decided prior to the onset of the COVID-19 pandemic. In response, the defendant maintains these cases are distinguishable because they involve individuals who were charged with mass murders or participated in vast criminal conspiracies. But this is not an entirely correct characterization.

The Court has conducted independent research to locate cases that address the length of detention in the context of pandemic-caused delays. To be sure, there are few cases in which a defendant has been detained for as long as Nikparvar-Fard. And that is because this length of detention approaches the permissible bounds of due process. But there are several cases where no due process violation has been found for charges similar to the nature and gravity of the charges leveled against the defendant here. The defendant is charged, along with 12 co-defendants, of operating what can only be described as a "pill-mill." So, the Court rejects the defendant's claim

11

that the charges themselves make continued detention impermissible. *See, e.g.*, *United States v. Howard*, No. 4:17-CR-291-4, 2020 WL 1891880, at *4 (M.D. Pa. Apr. 16, 2020) (denying motion for bail for defendant charged with conspiracy to distribute controlled substances who, at that time, was detained for 27 months); *United States v. Nero*, No. 17-CR-20183-5, 2021 WL 1137988, at *3 (E.D. Mich. Mar. 25, 2021) (finding no due process violation for defendant charged with drug trafficking who will have been in custody 54 months when trial concludes); *United States v. Davis*, No. 3:18-CR-25-WDC-HBG, 2020 WL 8614599, at *11 (E.D. Tenn. Dec. 17, 2020), *report and recommendation adopted*, No. 3:18-CR-25-KAC-HBG-1, 2021 WL 666963 (E.D. Tenn. Feb. 19, 2021) (finding no violation for a defendant charged with conspiracy to distribute and distribution of controlled substances despite being detained since March 2019); *United States v. Andres Acevedo-Baldera*, No. 3:18-CR-00155 (AWT), 2020 WL 9156933, at *12 (D. Conn. Nov. 23, 2020) (denying due process argument for defendant charged with drug trafficking crimes who was detained for more than 28 months).

That such a 28-month delay is not unprecedented of course does not mean that it is not a disturbing amount of time to be detained prior to trial. Indeed, this case hovers at the outer limits of what is permissible under the due process clause. But, again, the length of detention alone is not considered in isolation.

The Court, having evaluated the *Accetturo* factors, finds that continued detention is not inappropriate under the circumstances. Not only is the defendant charged with a serious set of charges, he has not personally challenged the Court's prior findings that he poses a risk of flight and that he harbors an attitude of outright disdain and contempt for the judicial system and law enforcement. To that end, no evidence has been presented to the Court that would permit it to amend its previous factual findings. Nor has the defendant demanded trial or otherwise

demonstrated to the Court that he is serious about accelerating these proceedings. So, although concerns over the defendant's confinement are well-placed and valid, the Court concludes that his continued detention does not offend due process.

### CONCLUSION

For these reasons, and incorporating the findings and analysis set out in the Court's July 22, 2019 and April 20, 2020 Memoranda in this case, the Emergency Motion for Release is denied without prejudice to the defendant formally applying to further supplement his request.

Because the Court finds that the statutory factors support continued confinement and that such continued confinement does not offend due process, the Court does not reach the propriety of the defendant's proposed bail package, including the legal impediments to pledging a property subject to civil forfeiture as collateral.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

13