IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | Criminal No. 18-101-01 |
| MEHDI NIKPARVAR-FARD a/k/a MEHDI ARMANI | |

**DEFENDANT NIKPARVAR-FARD'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS STATEMENTS**

Defendant Mehdi Nikparvar-Fard, a/k/a Mehdi Armani, through his undersigned counsel, respectfully submits this Supplemental Memorandum in Support of his Motion to Suppress Statements.

Dr. Nikparvar-Fard filed a Motion to Suppress Statements (the "Motion") on September 12, 2019. (ECF 149). The Court held a hearing on the Motion on July 15, 2021. At the hearing, the cross-examination of the United States Marshals revealed serious evidentiary issues with the three tape recordings in question (the "arrest tapes"),[1] further supporting that the statements at issue should be suppressed or otherwise excluded from the evidence presented at trial.

### I. THE ARREST TAPES AND THEIR CONTENT SHOULD BE SUPPRESSED PURSUANT TO THE FIFTH AMENDMENT, BECAUSE NIKPARVAR-FARD WAS SUBJECT TO CUSTODIAL INTERROGATION.

As discussed during the hearing, this is not the first time that statements in the arrest tapes have been the subject of a motion to suppress. On January 12, 2018, Nikparvar-Fard was found guilty of one count of violating 18 U.S.C. § 115(a)(1)(B) for threatening a United States Marshal, and one count of violating 18 U.S.C. § 1001 for making a false and material statement to a United States Marshal. The statements that supported the violation of Section 115(a)(1)(B)

---

[1] Pursuant to the testimony of the Deputy United States Marshal at the hearing, the arrest "tape" actually consists of three separate recordings with gaps of unknown duration between recordings.

are on the second arrest tape.[2] Thus, before trial on those charges, Nikparvar-Fard moved to suppress those statements. The Court denied the motion to suppress, finding that the statements themselves were crimes and that the statements were not elicited during an interrogation, but that Nikparvar-Fard had volunteered the first statement and then made the second statement in response to a clarifying question. *Nikparvar-Fard*, 2017 WL 6055289, at *4. The Third Circuit affirmed this ruling. *United States v. Nikparvar-Fard*, No. 18-1720 (3d Cir. July 23, 2019) (non-precedential). Notably, neither Court addressed any of the specific statements that are currently at issue, which are on the third arrest tape.

Although United States District Judge Jan E. DuBois made the broad statement that the "defendant was not being interrogated when the Marshals were driving him from the AUC facility to the Courthouse," he then went onto analyze only a small portion of the interaction between the Marshals and Nikparvar-Fard. *Id*. Judge DuBois—and the Third Circuit—did not at all mention or address the statements now at issue, which were made later in time, *after* the custodial interrogation began and after Marshal Jonhannes Jarkowsky stopped and re-started recording the interaction with Nikparvar-Fard. *Id.*; *United States v. Nikparvar-Fard*, No. 18-1720, 782 Fed. Appx. 160 (3d Cir. July 23, 2019) (non-precedential). That is, the statements at issue here are not even on the same recording as those addressed by Judge DuBois. Furthermore, for the statements that it did address, the Third Circuit specifically stated that, "assuming arguendo that Nikparvar-Fard was being interrogated, the Fifth Amendment does not protect against speech that is itself a crime"; thus, whether an interrogation occurred was irrelevant to its finding. *Nikparvar-Fard*, No. 18-1720, 782 Fed. Appx. at 162.

---

[2] The statements at issue were "[Y]our face will be with me all the time, ok, we will see each other, don't worry about that, we will see each other." And "for somebody at my scale to come and threaten you. Is that what you think, if I wanted to do that, I pay a ni—er like this guy five grand to put a fucking pullet in your head if I wanta to do that." *United States v. Nikparvar-Fard*, No. 17-513, 2017 WL 6055289, at *1 (E.D. Pa. Dec. 7, 2017).

The interrogation began at the start of the third arrest tape, with Marshal Jarkowsy accusing Nikparvar-Fard of being a criminal: "I think you're a criminal." In making this accusation and then following-up with additional provoking statements questioning Nikpavar-Fard's medical education and the legitimacy of his medical practice, Marshal Jarkowsky used "words or actions that the police should have known were reasonably likely to elicit an incriminating response from the person." *Rhode Island v. Innis*, 446 U.S. 291, 303 (1980). Thus, Nikparvar-Fard should have received his *Miranda* rights and, because he did not, the interrogation violated his Fifth Amendment rights. Accordingly, the statements Nikparvar-Fard made during this interrogation cannot be admitted at trial by playing the third tape or the Marshals' otherwise testifying as to its content. *Dickerson v. United States*, 530 U.S. 428, 443–44, (2000) ("unwarned statements may not be used as evidence in the prosecution's case in chief").

The Government has claimed that none of the Marshals' statements or actions directed to Nikparvar-Fard could qualify as interrogation, because they were arresting Nikparvar-Fard on a civil contempt warrant and therefore could not have known their actions would illicit incriminating responses. Simply put, the Government claims that the Marshals had no knowledge that the DEA had been investigating Nikparvar-Fard for years and had executed raids on his clinics. According to the Government, the Marshals were not acting pursuant to any investigation into Nikparvar-Fard. However, the Marshals admitted to having asked for a photograph of Nikparvar-Fard, and one was emailed to them.[3] *See* Exhibit A – N.T., Grandison Tr., Jan. 9, 2018, 144:21-24. Thus, the Marshals had at least some knowledge regarding Nikpavar-Fard before they arrested him, and, by the time the interrogation started, they also

---

[3] The Government has represented to defense counsel that the photograph provided to the Marshals was a Department of Motor Vehicles photograph provided by the Marshals' supervisor, but also represented that it cannot locate the photograph or the email in which it was sent.

3

knew that he had committed the crimes of making a false statement to a federal officer and threating federal officers. *See* Exhibit B - N.T., Jarkowsky Tr., Jan. 9, 2018, 130:19-131:10 (admitting he said "I think you're a criminal" after a threat had been made); Exhibit C – N.T., Grandison Tr., Nov. 30, 2017, 59:22-60:7 (admitting that, by the time the Marshals put Nikparvar-Fard in the vehicle, they knew he had committed the federal offense of lying to federal officers five or ten minutes earlier). As such, even if the Marshals were not acting pursuant to a federal investigation, they still should have reasonably known that accusing Nikparvar-Fard of being a criminal was likely to illicit an incriminating response, when they knew he had already incriminated himself during the interaction.

## II. EVEN IF NOT SUPPRESSED PURSUANT TO THE FIFTH AMENDMENT, THE ARREST TAPES AND THEIR CONTENT ARE INADMISSIBLE.

During cross examination on July 15, 2021, Deputy United States Marshal Grandison testified that the arrest tapes were recorded without Nikparvar-Fard's consent and that the recording was not continuous. Specifically, Marshal Grandison testified that Marshal Jarkowsky personally decided to record Nikparvar-Fard's statements on his iPhone. Indeed, he was not directed to make the recording and did not ask Nikparvar-Fard for consent to make the recording. Nor did he follow any law enforcement protocol in making a recording with only one-party consent. He further testified that the recording was not continuous, but three separate recordings. Thus, Marshal Jarkowsky stopped and re-started the recording on at least two instances. No recording exists of the statements made during those breaks. On account of this new evidence, it is now clear that, even if the arrest tapes are not suppressed as an improper custodial interrogation in violation of Nikparvar-Fard's Fifth Amendment rights, they nonetheless cannot be admitted at trial because (1) the recording was made in violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act"); and (2) the

4

Government cannot properly authenticate the non-continuous recording as required by Federal Rule of Evidence 901(a).

> 1. **The Arrest Tapes and Testimony About their Content Are Inadmissible, Because They Violate the Pennsylvania Wiretap Act.**

The Pennsylvania Wiretap Act "'prohibits the interception, disclosure or use of any wire, electronic or oral communication.'" *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (quoting *Commonwealth v. Deck*, 954 A.2d 603, 607 (Pa. Super. 2008)). The law provides an exception where "all parties to the communication have given prior consent to such interception." 18 Pa. C.S. § 5704(4). Thus, Pennsylvania is a two-party consent state, and it is illegal to take and use a recording without prior consent from those involved. However, the Pennsylvania Wiretap Act also provides that law enforcement officers may record conversations without a warrant when one party—the officer—has consented to be recorded and the State Attorney General or District Attorney approved the recording. 18 Pa. C. S. § 5704(2)(ii).

Here, Marshal Jarkowsky used his personal iPhone to record Nikparvar-Fard without his consent, in violation of the Pennsylvania Wiretap Act. *See Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super. 2008) ("we find that, although [defendant] used an app on his smartphone, rather than a concealed tape recorder, to surreptitiously record his conversation [], the result is the same. His actions constituted a violation of [the Wiretap Act]."). He did not have the approval of the Pennsylvania Attorney General or the District Attorney. Thus, the arrest tapes are a clear violation of the Pennsylvania Wire Tap Act and they cannot be admitted at trial, nor can the Marshals cannot testify as to their content. *See Commonwealth v. Spence*, 91 A.3d 44 (Pa. 2014) (stating the Pennsylvania Wiretap Act provides for exclusion of evidence derived from intentional interception of a wire, electronic or oral communication not authorized by the Act). Indeed, Section 5721.1 of the Pennsylvania Wiretap Act provides, "no person shall

disclose the contents of any wire, electronic or oral communication, or evidence derived therefrom, in any proceeding in any court, board or agency of this Commonwealth," unless the person properly obtained his or her knowledge of the contents without violating the Act. The Supreme Court of Pennsylvania has maintained that the Act must be considered under a strict standard. *See Commonwealth v. Mason*, 247 A.3d 1070, 1080 (Pa. 2021) (stating, in interpreting the Wiretap Act, that "[when] the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit"); *see also Commonwealth v. Shreffler*, 249 A.3d 575, 581 (Pa. Super. 2021) ("Given our Supreme Court's admonition that the Wiretap Act must be strictly construed to preserve the fundamental Pennsylvania constitutional right to privacy . . ."). It follows from this standard that the Pennsylvania Wiretap Act's language expressly precludes the Marshals' ability to testify as to the content of the recordings they made in violation of the Act. Simply put, they cannot disclose the content of the recordings.

The Government will claim that, although made in violation of the Pennsylvania Wiretap Act, the recordings are still admissible because the Omnibus Crime Control and Safe Streets Act of 1968 ("Omnibus Act"), 18 U.S.C. §§ 2510, *et seq.*, preempts the Pennsylvania Wiretap Act, as it authorizes those "acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . ." 18 U.S.C. § 2511(2)(c). But such preemption does not apply unless Marshal Jarkowsky was acting under color of law. As explained in *Bansal v. Russ*, because the Omnibus Act and the Pennsylvania Wiretap Act conflict, "federal officers *participating in a federal investigation* are not required to follow [the Pennsylvania Wiretap Act]." 513 F. Supp. 2d 264, 283 (E.D. Pa. 2007) (emphasis added). Marshal Jarkowsky was not participating in any such investigation. Indeed, to avoid

suppression, the Government has specifically claimed that the Marshals had no knowledge that Nikparvar-Fard was under investigation when they arrested him and that the Marshals were merely going to execute a civil arrest warrant, thus, they could not possibly have interrogated Nikparvar-Fard. According to the Government, the Marshals were acting under color of law such that they are provided the protections of the Omnibus Act to permit their otherwise illegal recording while, at the same time, were not acting in a law enforcement capacity such that they would have known that calling Nikparvar-Fard a criminal would reasonably cause him to incriminate himself. How can both be true?

### 2. The Arrest Tapes Must Be Excluded, Because the Government Cannot Properly Authenticate Them.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "To authenticate a recording, an examiner must determine whether the recording was made, that is, recorded, *continuously and simultaneously* with the conversation it purports to represent." *United States v. Brown*, No. 2-00146-2, 2008 WL 510126 at *2 (M.D. Pa. 2008) (emphasis added). Because recorded evidence is likely to have a strong impact on the jury and is susceptible to alteration, "the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings.'" *Id.* at 121 (quoting *United States v. Knohl*, 379 F.2d 427, 440 (2nd Cir. 1967)). "The following factors are generally relevant considerations:

(1) That the recording device was capable of accurately recording the conversations offered in evidence;

(2) That the operator of the device was competent to operate the device;

7

  (3) That the recordings are authentic and correct;

  (4) That the recordings have not been altered;

  (5) That the recordings have been preserved in an appropriate manner;

  (6) That the speakers are accurately identified; and

  (7) That the conversations elicited were made voluntarily and in good faith, without inducement of any kind.

*United States v. Tartaglione*, 228 F. Supp. 3d 402, 411 (E.D. Pa. 2017) (citing *United States v. Starks*, 515 F.2d 112, 121, fn. 11 (3rd Cir. 1975)).

  Here, the Government cannot meet its burden to authenticate the arrest tapes. For years, the Government has been referencing the arrest tapes to maintain Nikpavar-Fard's pretrial detention as if they were one continuous recording, without clarifying that there were three separate recordings with breaks of unknown duration and content. The authenticity and accuracy of these tapes are therefore extremely suspect. *See United States v. Wardlaw*, 977 F. Supp. 1481, 1485 (N.D. Ga. 1997) (excluding non-continuous recordings as unauthenticated); *see also State v. Nantambu*, 113 A.3d 1186, 1199 (N.J. 2015) (excluding non-continuous recording as untrustworthy). Additionally, Marshal Jarkowsky made the recording on his own personal device, and the Government has not presented any evidence indicating that the recordings were kept in a proper chain of custody. Finally, the statements by Nikpavar-Fard were not elicited in good faith. Unbeknownst to Nikpavar-Fard, Marshal Jarkowsky controlled the ability to record his statements or not, by pushing a button on his iPhone. As fully detailed in Nikparvar-Fard's Motion to Suppress, Marshal Jarkowsky continued to goad a hysterical and enraged Nikpavar-Fard, while he also happened to be discretely recording only *selected parts* of the conversation. Indeed, Marshal Jarkowsky previously testified that he shut the recording off every time

8

Nikpavar-Fard seemed to calm down, based upon his own discretion.[4] Thus, the recordings are misleading, in that they were designed to show only Nikparvar-Fard's worst statements. The Marshals were not acting in good faith as they continued to induce Nikpavar-Fard to make additional incriminating or, at the very least, prejudicial statements.

As such, the Government cannot properly authenticate the three arrest tapes, and they should be excluded from evidence to be presented at trial.

### III. CONCLUSION

For the foregoing reasons, Dr. Nikparvar-Fard respectfully requests the Court grant his Motion to Suppress Statements or otherwise exclude the Government from using at trial the statements Nikparvar-Fard made during his arrest.

Dated: July 30, 2021

Respectfully submitted,

BLANK ROME LLP
BY:  /s Joseph G. Poluka
Joseph G. Poluka (PA Bar No. 42035)
Ann Querns (PA Bar No. 314145)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
poluka@blankrome.com
aquerns@blankrome.com
215-569-5624

FRANK DESIMONE, ESQUIRE
BY:  /s Frank DeSimone
Frank DeSimone (PA Bar No. 12359)
123 S. Broad St.
Suite 2500
Philadelphia, PA 19109
fdesimone2003@yahoo.com
215-567-3507

---

[4] Exhibit B – N.T., Jarkowsky Tr, Jan. 9, 2018 130:10-14 ("I turned it off the first time because there was, like, a lull in the conversation so I thought it was, like -- I mean, I thought it was de-escalated. And then, -- well, the second time it was just by pure accident. I just turned it off and then I turned it back on.").

**CERTIFICATE OF SERVICE**

I, Joseph G. Poluka, hereby certify that, on July 30, 2021, a true and correct copy of the foregoing was served upon all counsel of record by the Court's Electronic Case Filing System.

/s/ Joseph G. Poluka
Joseph G. Poluka (PA Bar No. 42035)
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
poluka@blankrome.com
215-569-5624