IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-101-1 |
| MEHDI NIKPARVAR-FARD, a/k/a MEHDI ARMANI | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR
RECONSIDERATION OF PRE-TRIAL DETENTION

I.  **INTRODUCTION**

Once again, the defendant seeks pretrial release. This time, the defendant falsely claims that the government "withheld exculpatory evidence" and insinuates that the government purposely delayed production of discovery to disadvantage him. D.D.E. 417. The defendant further argues that these false claims somehow entitle him to bail. Despite the defendant's hyperbolic assertions, nothing has changed since the defendant first sought detention, except for the passage of additional time. The defendant continues to pose a flight risk, continues to pose a threat to government witnesses, and continues to have no respect for the law or for the authority of this Court. Moreover, the evidence remains the same and the government's case continues to be strong. In other words, the reasons the defendant was originally detained -- and has remained detained -- persist, and the defendant has offered no evidence to the contrary. Instead, he attempts to shift the blame for his detention from himself – who landed in pretrial detention through his own bad conduct -- to the government, all because the government produced discovery as required by law. Under these circumstances, the defendant is not entitled to bail. Although the defendant's pretrial detention has been unusually long, the mere passage of time is not sufficient to justify the defendant's release.

## II.    BACKGROUND

On December 19, 2018, Mehdi Nikparvar-Fard ("Nikparvar-Fard") was arrested on a one-count indictment charging a violation of 21 U.S.C. § 846. On January 9, 2019, a grand jury returned a five-count superseding indictment charging Nikparvar-Fard, and twelve additional defendants, with violations of 21 U.S.C. § 856, 18 U.S.C. § 2, and 21 U.S.C. § 846. The charges arise from the defendant's operation of four Advanced Urgent Care (AUC) facilities located in the Eastern District of Pennsylvania. The defendant is accused of maintaining these businesses for the purpose of illegally distributing controlled substances outside the usual course of professional practice and for no legitimate medical purpose and conspiring with certain employees to illegally distribute controlled substances to the public. The government filed a motion to declare this matter a complex case, the Court granted that motion, and a jury trial was scheduled for April 20, 2020.

The trial has been continued from April 20, 2020, to June 15, 2020, to December 7, 2020, to June 7, 2021, to October 4, 2021, to January 20, 2022, and to May 31, 2022, all due to COVID-19. Trial is currently scheduled for January 9, 2023. The Court has denied multiple motions filed by Nikparvar-Fard seeking his release from pretrial detention to home confinement. *See* D.D.E. 137, 231, and 276. Therefore, Nikparvar-Fard has remained in custody for the past 42 months while awaiting trial.

## III.    DISCUSSION

The standard for assessing when a defendant's pretrial detention violates due process is detailed in *United States v. Accetturo,* 783 F.2d 382 (3d Cir. 1986). There, the Third Circuit explained that:

> Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial. Instead, we believe that due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the

>charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.

*Id.* at 388.

The Court, in its July 26, 2019 opinion, spent considerable time analyzing the *Accetturo* factors. *See* D.D.E. 137, pages 23-29. The Court specifically noted:

>Considering the *Accetturo* factors and the other unique circumstances of this case, Dr. Nikparvar-Fard's continued detention does not violate due process. As set forth more fully above, the seriousness of the at-issue charges, the weight of the evidence, and Dr. Nikparvar-Fard's history of ignoring court orders and making threats all favor detention, contributing to a real and substantial risk of flight and to the community. And none of the other factors identified by the court in *Accetturo*, including the length of detention and the complexity of the case, require Dr. Nikparvar-Fard's release.

*Id.* at 26.

In its May 27, 2021 opinion the Court similarly concluded:

>The Court, having evaluated the *Accetturo* factors, finds that continued detention is not inappropriate under the circumstances. Not only is the defendant charged with a serious set of charges, he has not personally challenged the Court's prior findings that he poses a risk of flight and that he harbors an attitude of outright disdain and contempt for the judicial system and law enforcement. To that end, no evidence has been presented to the Court that would permit it to amend its previous factual findings. Nor has the defendant demanded trial or otherwise demonstrated to the Court that he is serious about accelerating these proceedings. So, although, concerns over the defendant's confinement are well-placed and valid, the Court concludes that his continued detention does not offend due process.

D.D.E. 276 at 12-13.

The Court's findings and conclusions still apply.  The only change has been the passage of additional time.  However, time spent in pretrial detention is one factor, among many, that a court should consider in resolving a due process claim.  Indeed, courts have held that "the length of detention alone is not dispositive." *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000).  In addition, the Third Circuit has cautioned against drawing "arbitrary lines" in this analysis, and explained that "due process judgments should be made on the facts of each individual case." *Accetturo,* 783 F.2d at 388.  Based on the facts of this case, the defendant's pretrial detention does not violate due process and he should continue to be detained.

With respect to the *Accetturo* factors, the defendant does not dispute the seriousness of the charges or the complexity of the case.  Nor does he dispute – or offer to rebut -- the Court's previous findings underlying the Court's conclusion that no combination of conditions will reasonably assure the defendant's presence at trial, including:

- The defendant's "history of undisguised antipathy to judicial processes."
- The defendant's previous failures to appear in court and to comply with judicial processes.
- The defendant's prior conviction for "retaliating against a federal marshal after he threatened the official while possessing a concealed weapon."
- Allegations that the defendant threatened to hire someone to kill a former employee who was a witness in a state court proceeding.

D.D.E. 276 at 6.  The Court previously concluded that taken together, these events "paint a troubling picture" of the defendant as someone who "has (1) no regard for judicial process; (2) no respect for witnesses; and (3) no credibility as to his purported willingness to follow the Court's rules and orders." *Id.* quoting D.D.E. 137 at 12.

Instead of rebutting or challenging these findings – as the defendant has been invited by the Court to do -- the defendant argues that he should be released despite them. He claims he should be released because the government "withheld" evidence "until just weeks before trial." D.D.E. 417 at 2. As is discussed in detail below, the defendant's exaggerated allegations of the government's purported misdeeds do not withstand scrutiny and, in any event, offer no basis for pretrial release and no substitute for actual evidence of changed circumstances.

There is no dispute that the defendant has been held in pretrial detention for an extended time. He has been detained approximately 42 months. He will have been detained more than 48 months by the time of trial, which can be expected to last approximately six weeks. However, if convicted, the defendant faces an estimated advisory guideline range of 292 to 365 months in prison, which is six or seven times as long as his expected pretrial detention. Moreover, while 48 months of pretrial detention is unusually long, it is not without precedent. *See, e.g., United States v. Nero*, 2021 WL 1137988, at *3 (E.D. Mich. Mar. 25, 2021) (concluding that pretrial detention of "51 months when trial begins and 54 months by the time trial concludes" did not violate due process where other factors favored continuing detention); *United States v. Noble*, 2020 WL 3487845, at *5 (W.D. Pa. June 26, 2020) (41 months of pretrial detention did not violate due process even though "case does not appear to be a complex case."); *United States v. Flores*, 2018 WL 3530837, at *2 (C.D. Cal. July 20, 2018) (43 months of pretrial detention, expected to last for a total of 52 months, did not violate due process); *United States v. Robinson*, 2014 WL 2207970 (W.D.N.Y. May 28, 2014) (continuing a pretrial detention of over 40 months without prejudice to renewal of the motion for release in six months on due-process grounds); and *United States v. Speed*, 2013 WL 6531950, at *5 (W.D.N.Y. Dec. 12, 2013) (55 months of pretrial detention did not offend due process).

The cases cited by the defendant on this point are distinguishable. In *United States v. Gonzales Claudio*, the court held that the defendant's detention of 26 months extended beyond constitutional limits. *United States v. Gonzales Claudio,* 806 F.2d 334, at 340-43 (2d Cir. 1986). In doing so, however, the court found it "significant" that there was an "absence of any prior acts specifically evidencing likelihood of flight," such as evidence of flight from lawful authority or failure "to honor court orders." As is discussed above, the same cannot be said here.

Other cases cited by the defendant involved the prospect of indefinite detention. *See* United *States v. Ojeda Rios*, 846 F.2d 167, 168-69 (2nd Cir. 1988) (releasing defendant on due process grounds where defendant had been detained for 32 months, "case cannot be reached for trial before next fall at the earliest," which would cause an additional delay of at least several months, and the trial would take "many months to try."); *United States v. Rodriguez*, 2012 WL 6690197, at *13 (W.D. N.Y. Dec. 21, 2012) (Defendant was in custody for 38 months, the case was still "at least a year away from being ready for trial," and the government "chose to layer this case with four superseding indictments," which added little substance to the defendant's alleged conduct but added more parties to the case and required the parties to "start over with discovery" three years after the defendant had first been charged); *United States v. Renzulli*, 1987 WL 17562, at *4 (E.D. Pa. Sep. 28, 1987) (Defendant was in custody in excess of 90 days, case involved 25 defendants and 56 counts, "lawyers will require an unusual amount of time for preparation," trial date was "undetermined," and trial was projected to last at least one month). Here, by contrast, there is an end in sight. A trial date is set, no additional delays are expected, and trial will likely take approximately six weeks. Moreover, the court in *Ojeda Rios* explicitly stated that it made its decision "solely on the facts of the instant case, without attempting to set a

bright-line precedent for future cases." *Id.* at 169. Based on the facts of this case and the defendant's history, as discussed above, a different result is warranted.

In addition, it is important to note the impact of COVID-19 on the length of the defendant's pretrial detention, which also distinguishes this case from other due process cases. The delay between the defendant's arrest in December 2018 and the first trial date in April 2020 was attributable to the complexity of the case. The subsequent delays from April 2020 to the May 31, 2022 trial date were attributable to COVID-19. As the Court previously noted, "Due to the COVID-19 pandemic, [the defendant's] trial has been continued several times, and there is no reasonable expectation of an imminent trial date for reasons unrelated and unprompted by the presiding Court, the Government, or the defendant." D.D.E. 276 at 4; *see also United States v. Miles*, 2021 WL 1388162, at *3 (E.D. Mich. Apr. 13, 2021 (denying motion for release on due process grounds and concluding that delay cause by the global pandemic is not the government's responsibility) *quoting United States v. Thompson*, 2020 WL 7480937, at *3 (W.D. Ky. Dec. 18, 2020) ("While regrettable, the delays to Thomson's trial caused by the global pandemic – which has forced the entire judicial system to adapt in unprecedented ways – are not the government's responsibility."); *United States v. Jackson*, 2021 WL 753307, at *3 (E.D.N.Y. Feb. 26, 2021) ("The delay in this case is due solely to the temporary suspension of trials in response to the COVID-19 pandemic.").

Nonetheless, the defendant argues that he must be released from detention because the delay from May 31, 2022 to the current trial date of January 9, 2023, a total of a little over seven months, is "the Government's fault" due to a "late dump of evidence" that somehow "prejudices" the defendant. D.D.E. 417 at 1-2, 11. The defendant's argument ignores an

additional reason for the most recent delay, omits relevant legal analysis, and fails to demonstrate how he was prejudiced by the government's discovery production weeks in advance of trial.

As an initial matter, the defendant failed to note that at a pretrial conference on May 12, 2022, at least three of his co-defendants sought a delay of the May 31, 2022 trial date, in part, to await the U.S. Supreme Court decision in *United States v. Ruan*, 966 F.3d 1101 (11th Cir. 2020) (involving the scope of the good faith defense when a physician is alleged to have prescribed controlled substances outside the usual course of professional practice). Defendants insisted that the decision could impact the trial of this matter, including with respect to defense opening statements and proposed jury instructions. This followed a discussion about the *Ruan* case during an April 18, 2022 pretrial conference. At that conference, counsel for the defendant joined in the argument that the pending decision would have an impact on the trial of this matter. The government disagreed based on the strong evidence of the defendants' intent. After that discussion, the government notified the Court and the parties during the April pretrial conference that it was preparing to produce additional discovery, some of which was voluminous. Thus, the impact of the *Ruan* case was raised, and a delay of the May 31, 2022 trial date appeared likely, before the parties were even notified of the government's supplemental discovery production. In any event, the potential impact of the *Ruan* decision was subsequently made an explicit reason for the delay by at least three co-defendants at the May 12, 2022 conference. Accordingly, the defendant's claim that the continuance of the trial date "is the Government's doing" (D.D.E. 417, at 2) leaves out important facts. It is worth noting that as of this writing the parties are still waiting for the U.S. Supreme Court's decision.

The defendant's motion also leaves out pertinent legal analysis. The defendant repeatedly claims that the delay from May 31, 2022 to January 9, 2023 is the "Government's

fault." However, without more, the defendant's conclusory allegations are unpersuasive. The case law shows that the analysis involves not just a simple assignment of blame for any delays, but a determination whether the delay was needless or intentional. For example, in *Accetturo,* the Third Circuit instructed courts engaged in a due process analysis to consider not whether a particular party was at fault for the delay, but rather "whether the strategy of one side or the other has added needlessly" to the complexities of the case." *Id.* at 388; *see also United States v. Hill*, 462 Fed. Appx. 125, at 127 (2d Cir. 2012) (holding that continued detention did not violate due process and noting that "the record reflects no intentional, unwarranted delay by the prosecution."). Here, there is no evidence that the government has adopted a strategy of needlessly adding to the complexities of the case or engaged in any conduct intended to cause unwarranted delay. On the contrary, the government merely produced discovery it was obligated to produce.

Next, the defendant's motion leaves out any actual evidence of the alleged prejudice he suffered as a result of the government's production of supplemental discovery. For example, the defendant complains that the government produced "more than 100 jail calls," (D.D.E. 417 at 1) but fails to explain how production of recordings of his own conversations negatively impact him or, for that matter, how the recordings are in any way relevant to the trial of this case.

In addition, the defendant complains that the government produced "more than 70,000 pages, many of which are charts that the Government for years refused to produce and instead would only 'make available.'" D.D.E. 417 at 1-2. Again, the defendant fails to show how he was harmed by the production of records that he concedes were previously made available to him years ago. With respect to the patient charts, it is also worth noting that pertinent portions of many of those charts were affirmatively produced to the defendant over two years ago, a fact that

the defendant failed to mention. The patient charts at issue in this motion involve the drug conspiracy charged in Count Five of the superseding indictment.[1] Count Five alleges that the defendant and other co-conspirators signed blank prescriptions so Highland Campbell, who had lost his DEA registration number, could continue to see patients, and prescribe controlled substances. Over two years ago, the government produced copies of the illegal prescriptions from many of these charts, as well as portions of the charts showing that Highland Campbell had been the treating physician when the prescriptions were issued. The government elected to produce the complete patient charts before trial because it intended to use some of them as exhibits at trial. Thus, while the defendant claims that the production of these charts prejudiced him, the reality is that the charts were nothing new, considering that the government repeatedly made them available to him and produced pertinent portions to him years ago.

The defendant also complains that the government produced "60 hours of surveillance footage and undercover audio and video recordings from 2017 made by a previously undisclosed source." D.D.E. 417 at 1, 10. However, the defendant fails to explain how he was harmed by the production of these recordings over a month before trial. The recordings consist, in part, of many hours of aerial surveillance footage, which will be of no use or interest to anyone at trial. Moreover, the undercover recordings are of questionable relevance. The defendant claims that the recordings are "exculpatory" because "confidential informants and undercover agents went into [AUC] and received appropriate medical care." D.D.E. 417 at 12. However, the defendant fails to show how any such evidence would be relevant, much less exculpatory. Evidence that the defendant occasionally did not deal drugs to patients (or did not deal drugs to people he

---

[1] The patient charts underlying Counts One through Four of the superseding indictment were produced years ago and are not the subject of the defendant's motion.

suspected of being undercover agents), is not probative of whether the defendant repeatedly dealt drugs to patients on hundreds of other occasions, as the evidence will show that he did. Nor is the evidence relevant to determining whether the defendant participated in a drug conspiracy by signing blank prescriptions so a co-conspirator could prescribe controlled substances to AUC patients without any legal authority to do so. In short, the defendant's complaints are strong on hyperbole, but weak on substance.[2]

For the same reasons, the defendant has failed to show any change in the strength of the government's case on the merits. None of the complained of discovery has any negative impact on the government's trial evidence. The government has assembled substantial trial evidence to prove its case, including a respected expert witness who will testify that the defendant issued hundreds of prescriptions for dangerous and addictive drugs without any legitimate medical purpose, six cooperating defendants who have pled guilty to their crimes and are prepared to testify against the defendant, numerous other witnesses with knowledge of the defendant's practices, including former patients and employees, and documentary evidence, such as patient charts, corroborating the witness testimony. While the defendant blames the government, he fails to acknowledge his own conduct that has resulted in his continued detention, including the

---

[2] In arguing that the government "withheld" allegedly "exculpatory evidence" (D.D.E. 417 at 12), the defendant conveniently fails to note that a new trial team took over this case for the government only a few months before trial, and then proceeded to review hundreds of thousands of pages of discovery and disclose – prior to trial – discoverable material that it could not confirm had been previously produced. While the government concedes that some discovery was produced later than it ideally should have been, this was due largely to changeover of personnel within both the investigating agencies and the trial teams and was not attributable, as the defendant suggests, to some nefarious government strategy to "punish" the defendant by causing needless delay. The government produced the supplemental discovery as quickly as possible and continued to prepare for trial, confident that it would have been ready for trial on May 31, 2022, despite the discovery of some materials that were new not only to the defense, but to the government's trial team as well.

strong evidence of his involvement in serious drug trafficking crimes and the absence of any evidence that the defendant will comply with the Court's orders and appear as required.

IV. **CONCLUSION**

In light of the defendant's sordid history of "unabashed disdain for authority and a total lack of respect for courts and law enforcement" (D.D.E. 137 at 10), the absence of any new evidence that would justify the defendant's release, the strength of the government's evidence on the merits, and the myriad factors impacting the length of the defendant's detention, including the extraordinary disruptions cause by COVID-19, the defendant's continued confinement does not offend due process. Accordingly, the government respectfully requests that the Court deny the Defendant's Motion for Reconsideration of Pre-Trial Detention.

        Respectfully submitted,

        JACQUELINE C. ROMERO
        United States Attorney

        */s/ Mary Kay Costello*
        MARY KAY COSTELLO
        CHRISTOPHER PARISI
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Response was served by electronic filing (ECF) on the following defense counsel:

> Joseph Poluka, Esq.
> Frank DeSimone, Esq.
> Counsel for Mehdi Nikparvar-Fard

> _/s/ Mary Kay Costello_
> MARY KAY COSTELLO
> Assistant United States Attorney

Date: June 21, 2022