## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MEHDI NIKPARVAR-FARD | : | No. 18-101-1 |
| a/k/a "Mehdi Armani" | : | |

## M E M O R A N D U M

PRATTER, J.                                                                    JULY 26, 2022

Due process is a flexible concept. It can and should deal with exigencies. But it is not so elastic as to permit the continued pretrial detention of a criminal defendant in seeming perpetuity when the circumstances of the detention evolve and multiple factors come to weigh in favor of conditional release.

### BACKGROUND

Mehdi Nikparvar-Fard is a medical doctor charged with four counts of maintaining a drug-involved premises, aiding and abetting the same, and one count of conspiring to unlawfully distribute oxycodone to his patients, in violation of 21 U.S.C. §§ 846 and 856 and 18 U.S.C. § 2. These charges arise from his ownership of Advanced Urgent Care ("AUC"), which operated four clinic facilities throughout the Eastern District of Pennsylvania.  He, along with seven other doctors, four physician assistants, and an office manager, were charged with using the AUC clinics to distribute thousands of illegal prescriptions for controlled substances to the public, outside the usual course of professional practice, and for no legitimate medical purpose.

Dr. Nikparvar-Fard's pretrial detention for this matter began on December 19, 2018. He has now been held for 43 months—three and a half years. Shortly after his arrest, the Government moved for pretrial detention, and a magistrate judge found that the Government had proved by a

preponderance of the evidence that Dr. Nikparvar-Fard posed a serious flight risk. Meanwhile, his co-defendants have remained out on bail.

The jury trial for this case has been rescheduled seven times. It was initially set for April 20, 2020, and then continued to June 15, 2020; to December 7, 2020; to June 7, 2021; to October 4, 2021; to January 20, 2022; to May 31, 2022; and, finally, to January 9, 2023. While the first six continuances were arguably attributable to difficulties imposed by COVID-19, the final seven-month postponement was prompted by the Government's late production of a large cache of evidence that Dr. Nikparvar-Fard argues is exculpatory.

Since the initial determination that his pretrial detention was fully warranted, Dr. Nikparvar-Fard has moved for reconsideration on multiple occasions. The Court had denied each of the motions to reconsider prior to the current motion because it found that Dr. Nikparvar-Fard had not offered sufficient evidence that would alter the Court's prior conclusions that continued pre-trial detention was appropriate.

Dr. Nikparvar-Fard once again challenges his pretrial detention. In his latest motion, he argues that his release is now warranted because, unlike other instances of rescheduling of the jury trial for this case, the most recent seven-month delay is due to the Government's failure to produce considerable audio and video footage and because the length of his pretrial detention now exceeds "the permissible bounds of due process" in violation of the Fifth Amendment to the United States Constitution. The Court heard oral argument on this motion on July 5, 2022, and issued an Order granting Dr. Nikparvar-Fard's motion on July 7, 2022. The Court now outlines the reasoning for its ruling.

2

## LEGAL STANDARD

The eligibility of a detainee for bail is governed by the Bail Reform Act. 18 U.S.C. §§ 3402 *et seq.* The Bail Reform Act requires that a pretrial defendant be released unless "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2015) (quoting 18 U.S.C. § 3142(e)(1)).

Once a defendant is ordered detained, he may move for revocation or amendment of that order. 18 U.S.C. § 3145(b). When reconsidering whether conditional release is adequate to secure a defendant's appearance, the Court must consider the facts of each individual case, guided by the factors set forth in the Bail Reform Act for the initial determination of pretrial detention, as well as certain additional factors, called collectively the *"Accetturo* factors": (1) the gravity of the charges, (2) the degree to which the defendant poses a risk of flight or a danger to the community, (3) the strength of the Government's case on the merits, (4) the length of the pretrial detention that has already occurred, (5) the complexity of the case, and (6) whether either side has "added needlessly" to that complexity through its litigation strategy. *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986). The Court's determination on a motion for reconsideration of pretrial detention must be made promptly. 18 U.S.C. § 3145(b).

## DISCUSSION

Dr. Nikparvar-Fard has raised multiple challenges to his continued detention. He argues that the considerable length of his pretrial detention weighs in favor of release, that the Government's strategy has further delayed trial, that he is not a flight risk, and that the Government's recent production of documents adds to the complexity of the case. He argues that

the majority of the *Accetturo* factors weigh in favor of his release and that continued pretrial detention violates his due process rights.

## I.    While the Charges Against Dr. Nikparvar-Fard Remain Serious, Certain Conditions Can Reasonably Assure His Appearance

Sensibly, Dr. Nikparvar-Fard does not dispute the seriousness of the charges made against him. But, he argues, the Court can impose a "combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Soriano Nunez*, 928 F.3d at 244 (quoting 18 U.S.C. § 3142(e)(1)). For instance, Dr. Nikparvar-Fard has promised to post a cash bond of $100,000.[1] Additionally, he must post the full equity interests in two family-owned properties in Pennsylvania and South Carolina. Close friends of the defendant's family are also pledging real properties as part of the network of people standing behind the defendant's obligations to appear for trial. Further, while released on bail, Dr. Nikparvar-Fard has agreed that he will not be permitted to leave his family property in Pennsylvania; shall be monitored by a global positioning device; shall avoid all direct or indirect contact with anyone other than his family, medical doctor, and attorneys; and shall not have access to dangerous weapons. Finally, Dr. Nikparvar-Fard and his wife must surrender all passports and visas and are not permitted to apply for passports, travel documents, or the sanctuary of any other governmental entity before or during the pendency of the trial. The Court reluctantly finds that these conditions, in combination, are sufficient to protect the community and reasonably should assure Dr. Nikparvar-Fard's future appearance because of the inordinate passage of time since the defendant was first detained in this case.

---

[1]    The defendant's proposal was to post only $50,000 in cash. The Court doubled the amount as one of many conditions for pretrial release.

## II.   The Recent Developments in Applicable Case Law Add Complexity to an Already Complex Case

Less than one month ago, the Supreme Court resolved varying interpretations amongst the courts of appeals of the *mens rea* standard for § 841 of the Controlled Substances Act, 21 U.S.C. § 841, a statute close to the one that can figure prominently in the Nikparvar-Fard prosecution. *Ruan v. United States*, 142 S. Ct. 2370, 2374 (2022). In *Ruan*, the Supreme Court held that § 841 requires the Government to prove beyond a reasonable doubt that a defendant charged with dispensing controlled substances like opioids "knew that he or she was acting in an unauthorized manner, or intended to do so." *Id.* at 2374.

Dr. Nikparvar-Fard argues that, as a result of the *Ruan* decision and because the same "except as authorized" clause appears in the provision under which he is being charged, 21 U.S.C. § 856, the Government will not only need to prove that he knew or intended prescriptions of controlled substances to be illegal, but that he maintained AUC clinics for the purpose of illegally prescribing. While the Government denies that the *Ruan* case will impact its trial strategy, it may very well impact Dr. Nikparvar-Fard's defense strategy.

Even before the Supreme Court's decision in *Ruan*, Dr. Nikparvar-Fard represented that he would have significant work ahead of him to prepare for his trial. Counsel persist in saying that this case is expected to last approximately six weeks and involve hundreds of thousands of pages of discovery, including patient records and expert testimony. Dr. Nikparvar-Fard argues that he has only inconsistent (at best) access to the evidence involved in his case due to the Federal Detention Center's facilities and policies. Without casting any blame on the Bureau of Prisons or the Federal Detention Center, the Court acknowledges that continued limited access to discovery materials could hamper Dr. Nikparvar-Fard's ability to prepare a defense in time for trial in January

5

2023. His release, on the other hand, would permit him regular access to his counsel and to the evidence, which could help to speed this long-lingering case toward the latest trial date.

### III.   The Government's Actions Have Contributed to the Length of Dr. Nikparvar-Fard's Pretrial Detention

In considering Dr. Nikparvar-Fard's arguments in previous motions to reconsider pretrial detention, the Court found that there was "no 'blame' to be assigned for the onset of the COVID-19 pandemic and the resulting changes to trial proceedings." That is, strictly speaking, no longer the case. The Government's late production of 70,000 pages and 60 hours of surveillance footage less than a month before the previously scheduled trial date of May 31, 2022, contributed needlessly and problematically to the complexity of the matter and resulted in yet another seven-month delay of the multi-defendant trial.

Dr. Nikparvar-Fard has now been in pretrial detention for 43 months. If he were to remain in detention until his new trial date, he would spend *at least* 50 months in pretrial detention. In considering an earlier motion to reconsider pretrial detention, the Court had been concerned about the growing duration of Dr. Nikparvar-Fard's pretrial detention, which at that time was 28 months, and, indeed, found that 28-month detention to "hover[] at the outer limits of what is permissible under the due process clause." Doc. No. 276, at 12. The Government now concedes that a pretrial detention period of 43 to 50 months is unusually long but argues it is not without precedent, nor should "the length of detention alone [be] dispositive" or "by itself offend due process." *See United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000). Yet the handful of cases cited by the Government with equivalent or longer pretrial detention periods are plainly distinguishable because they involved cases where the defendants had been charged with violent crimes or had a history of violating the terms of their probation. *See, e.g., United States v. Nero*, No. 17-cr-20183-5, 2020 WL 9264925, at *6 (E.D. Mich. Dec. 11, 2020) (concluding that a 50-month detention by the

conclusion of trial did not violate due process when the defendant was charged for offenses related to his role in a violent and extensive drug-distribution and human-trafficking conspiracy); *United States v. Flores*, No. 2:14-cr-684, 2018 WL 3530837, at *2–3 (C.D. Cal. July 20, 2018) (finding that an anticipated 52-month pretrial detention did not violate due process where the defendant was an alleged member of a criminal street gang involved in firearm sales who had violated probation by associating with other documented gang members); *United States v. Speed*, No. 09-cr-329, 2013 WL 6531950, at *2,*4 (W.D.N.Y. Dec. 12, 2013) (finding that expected 55-month pretrial detention was appropriate where the defendant was part of a criminal drug-distribution organization that committed murder, robbery and extortion in furtherance of the enterprise). While the charges against Dr. Nikparvar-Fard are grave, he does not have a long history of actual physical violence or probation violations to warrant his continued detention. Further, the Court has not considered in isolation the number of months Dr. Nikparvar-Fard has been detained, but rather has observed that fact along with a number of other considerations in coming to its conclusion, as directed by the Court of Appeals for the Third Circuit. *Accetturo*, 783 F.2d at 388.

Having evaluated the *Accetturo* factors anew on the facts before it, the Court finds that even though this defendant has well-documented incidents of wrongful conduct demonstrating a shameful lack of respect for judicial processes and law enforcement, continued pretrial detention is no longer compelled under the circumstances. While Dr. Nikparvar-Fard faces serious charges, the complexity of the case before him, the hopefully reduced risk of flight and danger to the community achieved through the multiple conditions of his bail, the role of the Government in the most recent continuation of the trial date, and the amount of time already spent in pretrial detention weigh in favor of permitting Dr. Nikparvar-Fard's conditional release. The Court concludes that continued detention would, indeed, offend due process.

CONCLUSION

For these reasons, the Court grants the motion for reconsideration of the pretrial detention order.  An appropriate order has been filed.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE