IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MEHDI NIKPARVAR-FARD | : | |
| a/k/a "Mehdi Armani" | : | No. 18-101-01 |
| MITCHELL WHITE | : | No. 18-101-06 |

**MEMORANDUM**

PRATTER, J.                                                                                           JANUARY 9th, 2023

### INTRODUCTION AND BACKGROUND

In 2019, a grand jury returned a five-count Superseding Indictment against Mehdi Nikparvar-Fard, a medical doctor, Mitchell White, a physician's assistant, and 11 other defendants, each of whom worked at a medical clinic, Advanced Urgent Care ("AUC"), with four locations in the Eastern District of Pennsylvania. Dr. Nikparvar-Fard is charged with five counts: four counts of maintaining drug-involved premises, in violation of 21 U.S.C. § 856(a)(1), and aiding and abetting, in violation of 18 U.S.C. § 2 (Counts One through Four) and one count of conspiracy to unlawfully distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). Mr. White is charged on Counts One through Three and Count Five. Dr. Nikparvar-Fard and Mr. White's trial is scheduled to begin on January 9, 2023.

Dr. Nikparvar-Fard and Mr. White have joined in one motion *in limine* originally filed by Samantha Hollis, who has since been dismissed, seeking to exclude the term "pill mill" at trial. Mr. White has filed two further motions *in limine*, each joined by Dr. Nikparvar-Fard, and Dr. Nikparvar-Fard has also filed one omnibus motion *in limine*. The Government has responded only to the motion to exclude the term "pill mill" at trial. For the reasons articulated below, the Court

1

will deny the Motion *in Limine* to Preclude Use of the Term "Pill Mill," the Motion *in Limine* to Limit Expert Testimony to a Proper Testimonial Format and Opinions Disclosed in Accordance with Federal Rule of Criminal Procedure 16(a)(1)(G), and the Omnibus Motion *in Limine*. The Court will grant in part the Motion *in Limine* to Preclude (1) References to "Illegal" or "Criminal" Prescriptions and (2) the Term "Reasonable Medical Certainty" with regard to the terms "illegal" or "criminal" prescriptions, and denies the motion in part as it relates to the use of the term "Reasonable Medical Certainty."

## LEGAL STANDARD

Motions *in limine* are made prior to trial or the presentation of evidence in order to aid the clear presentation of evidence. "[A] motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F. 2d 1064, 1069 (3d Cir. 1990). "Evidence should only be excluded on a motion *in limine* if it is clearly inadmissible on all potential grounds. The movant bears the burden of demonstrating that the evidence is inadmissible on all potential grounds." *Feld v. Primus Techs. Corp.*, No. 12-cv-1492, 2015 WL 1932053, at *1 (M.D. Pa. Apr. 28, 2015) (internal citation omitted). A court's *in limine* rulings are not binding, so a judge may change her mind about the ruling in the course of a trial. *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

Notwithstanding the advantages of fully briefed motions *in limine* prior to the start of trial, "if the context of trial would provide clarity, the Court may defer the issues until trial." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). "[M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Certain rulings "should generally be deferred

until trial to allow for the resolution of questions of . . . potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

## DISCUSSION

### I. Motion *in Limine* to Preclude Use of the Term "Pill Mill"

Dr. Nikparvar-Fard and Mr. White join in the request of a recently dismissed co-defendant, Ms. Hollis, that the Court preclude the prosecution from using the term "pill mill" in the presence of the jury pursuant to Federal Rule of Evidence 403, arguing that it will create an image of the defendants prescribing medication in a way that is inconsistent with sound medical practice, thereby unfairly prejudicing them. In its response, the Government cites to Sixth Circuit caselaw upholding the use of the term during trial.

Rule 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. However, Rule 403 "does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).

Ms. Hollis does not specify at what point during the trial or during which witnesses' testimony it is anticipated this phrase may be used, nor does she cite to any caselaw indicating that other courts have granted similar motions *in limine*. In contrast, the Government cites to several cases, albeit outside of the Third Circuit, to support its contention that courts regularly permit the introduction and use of the term "pill mill" during trial. *See, e.g.*, *United States v. Guzman*, 571 F. App'x 356, 360–61 (6th Cir. 2014) (finding that the defendant provided no authority to support her contention that the term "pill mill" is so deprecatory as to warrant its prohibition at trial and noting that the term is in fact commonly used by courts); *United States v. Kincaid*, No. 10-cr-160, 2013 WL 5595404, at *3 (E.D. Tenn. Oct. 11, 2013) ("[T]he term 'pill mill' is merely a shorthand

3

way of characterizing the nature of the allegedly illegal operation [and] any prejudicial effect by the use of this term at trial is mitigated by the probative value of having witnesses that are able to accurately describe the activity of the instant defendants . . . ."); *United States v. Stapleton*, No. 12-11-ART-(1), (2), (4), 2013 WL 5966122, at *10 (E.D. Ky. Nov. 8, 2013) ("Compared to similar drug-related terms, 'pill mill' is not especially inflammatory."). The reasoning set forth in this line of caselaw persuades the Court that a pretrial order excluding the term "pill mill" is not appropriate. *See United States v. Zielke*, No. 17-cr-295, 2021 WL 1163868, at *6 (W.D. Pa. Mar. 26, 2021).

The Court will therefore deny the motion, without prejudice to Mr. White's ability to raise specific objections at trial should the need arise.

## II. Motion *in Limine* to Limit Expert Testimony to a Proper Testimonial Format and Opinions Disclosed in Accordance with Rule 16(a)(1)(G)

Mr. White moves the Court to limit the testimony of the Government's expert witness, Dr. Stephen Thomas, to a proper testimonial format and opinions disclosed in accordance with Federal Rule of Criminal Procedure 16(a)(1)(G).[1] Mr. White argues that in past cases where Dr. Thomas has appeared as a Government expert, his testimony has been verbose, unrestricted to a question-and-answer format, and unclear as to what is opinion and what is fact. Mr. White thus requests that the Court disallow opinions for which proper notice has not been given, disallow in advance the

---

[1] Federal Rule of Criminal Procedure 16(a)(1)(G) provides as follows:
At the defendant's request, the government must disclose to the defendant, in writing, the information [below] for any testimony that the government intends to use at trial under Federal rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed . . . .
- a complete statement of all opinion that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed . . . ; [and]
- the bases and reasons for them . . . .

Fed. R. Crim. P. 16(a)(1)(G)(i), (iii).

4

use of self-directed lecture-style testimony in favor of a question-and-answer format, and direct the Government to instruct Dr. Thomas in advance to limit his answers to specific questions posed. The Government did not file an answer to this motion.

Mr. White's motion appears to be a request for a ruling on a purely hypothetical basis. Based on his understanding of Dr. Thomas's testimony in previous cases, Mr. White assumes that the same purported issues will arise again in the case soon to be tried before this Court. Mr. White prematurely hypothesizes that Dr. Thomas's testimonial style will lead to the divulgence of opinions not disclosed prior to trial under Rule 16(a)(1)(G). However, Mr. White points to no specific opinion for which proper notice has not been given under Rule 16(a)(1)(G). Nor can Mr. White be certain that Dr. Thomas will engage in self-directed testimony or improperly go beyond the scope of answers to specific questions posed to him. Any potential prejudice to Mr. White arising from Dr. Thomas's alleged historical practice as an expert witness is conjecture at this time.

This motion *in limine* is denied without prejudice, such that Mr. White may raise his objections should his predictions as to the format of Dr. Thomas's testimony come to pass.

### III. Motion *in Limine* to Preclude (1) References to "Illegal" or "Criminal" Prescriptions and (2) the Term "Reasonable Medical Certainty"

Mr. White next seeks to preclude the Government from using the terms "illegal prescribing," "criminal prescribing," "illegal prescriptions," or "criminal prescriptions" instead of prescriptions "outside the usual course of professional practice and without medically legitimate purpose." In the same motion, he requests that the Government be precluded from using the term "reasonable medical certainty." The Court examines each of these arguments in turn.

#### A. "Illegal" or "Criminal" Prescriptions

Mr. White first asserts that, in light of the *mens rea* requirements of the crimes charged in the superseding indictment, the Government should not be able to describe prescriptions as

5

"illegal" or "criminal" solely on the basis of Dr. Thomas's conclusion that a prescription was medically necessary or outside the usual course of practice. Mr. White argues that such shorthand use of the terms is inaccurate, misleading, and unfairly prejudicial.

Mr. White is charged with violations of 21 U.S.C. § 856(a)(1) (Counts One through Four) and 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Count Five). To prove a violation of 21 U.S.C. § 856(a)(1), the Government must show that (1) "the defendant permanently or temporarily maintained . . . the place described in the Indictment," (2) "the defendant maintained that place for the purpose of manufacturing, distributing or using any controlled substance," and (3) "the defendant acted *knowingly*." 3 Leonard B. Sand et al., *Modern Federal Jury Instructions – Criminal* ¶ 56.06 (2022) (emphasis added). To pursue its theory of aiding and abetting under 18 U.S.C. § 2, the Government must show that (1) "another person has committed the crime charged," (2) "the defendant *knowingly* associate[d] himself in some way with the crime," and (3) the defendant "participate[d] in the crime by doing some act to help make the crime succeed." 1 *id.* ¶ 11.01 (emphasis added). To prove a violation of 21 U.S.C. § 846, the Government must show that (1) "two or more persons agreed to [distribute] a controlled substance," (2) the defendant "was a party to or a member of that agreement," and (3) the defendant "joined the agreement or conspiracy *knowing* of its objective[] to [distribute] a controlled substance and intending to join together with at least one other alleged conspirator to achieve that . . . objective." 3d Cir. Model Crim. Jury Instr. 6.21.846B (revised Dec. 2021) (emphasis added). Section 841's *mens rea* requires that the Government "prove beyond a reasonable doubt that the defendant *knowingly or intentionally* acted in an unauthorized manner." *Ruan v. United States*, 142 S. Ct. 2370, 2382 (2022) (emphasis added).

6

The Government's trial memorandum indicates that its expert, Dr. Thomas, will use his opinions on proper medical practice to opine whether prescriptions in AUC patient files were for a medically legitimate purpose in the usual course of professional practice. This is proper. *See id.* ("The Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence . . . by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'"). However, Mr. White has noted that in its trial memorandum, the Government repeatedly equates illegal or criminal prescribing with Dr. Thomas's conclusion that a prescription was medically unnecessary or outside the usual course of practice. This apparent conflation suggests that the Government's expert may improperly invade the province of the jury or cause confusion as to the elements of the crimes charged. *See* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.").

Mr. White's motion *in limine* will therefore be granted as it relates to the preclusion of the terms "illegal prescribing," "criminal prescribing," "illegal prescriptions," or "criminal prescriptions" instead of prescriptions "outside the usual course of professional practice and without medically legitimate purpose."

### B. "Reasonable Medical Certainty"

Mr. White argues in the same motion *in limine* that the Government and its expert witness, Dr. Thomas, should be barred from using the phrase "reasonable medical certainty" under Rule 403. He asserts that the phrase is ambiguous because it has no scientific or objective meaning and it may unfairly prejudice him, as the phrase could confuse the jury and undermine the jury's comprehension of the reasonable doubt standard.

7

"[E]xcluding evidence under [Rule] 403 at the pretrial stage is an extreme measure." *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 274 (3d Cir. 1991). That is because a court can only rarely determine the potential relevance of evidence under Rule 403 without a full record of the evidence to which an objection has been lodged. *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

The "extreme measure" of exclusion is not warranted here. *Hines*, 926 F.2d at 274. Mr. White notes that the Government has, in previous similar cases, permitted Dr. Thomas to testify as to his degree of medical certainty. However, Mr. White cites to only one instance in this case where Dr. Thomas uses the phrase "reasonable medical certainty" in his expert report. Mr. White cites to a 2016 memorandum issued by the Attorney General to Department of Justice department heads, which directs prosecutors to abstain from the use of the expression "reasonable [forensic discipline] certainty" or "reasonable scientific certainty," Memorandum from the Att'y Gen. to Heads of Dep't Components (Sept. 9, 2016), Doc. No. 393-1 at ECF 2, and a National Commission on Forensic Science report recommending the abandonment of the term "reasonable scientific certainty." Nat'l Comm'n on Forensic Sci., Testimony Using the Term "Reasonable Scientific Certainty," Doc. No. 393-2 at ECF 2. But he does not cite to any caselaw suggesting that a prophylactic ban on the term is the appropriate remedy based primarily on the expert witness's past testimony in unrelated cases. The Court is also hesitant to find that the degree of Dr. Thomas's confidence in his opinion as to whether prescriptions issued by the defendants were for a medically legitimate purpose lacks relevancy to this case. *See United States v. Chapman*, No. 11-cr-22-05, 2015 WL 13832911, at *9 (N.D. Ga. Jan. 5, 2015). Nor is the phrase so similar to the phrase "beyond a reasonable doubt" as to cause undue confusion to the jury. *Id.*

As this issue has been raised prematurely, Mr. White's motion *in limine* will be denied without prejudice as it relates to the preclusion of the term "reasonable medical certainty." Mr. White may renew the motion or seek a limiting instruction to the jury as necessary if the Government or its witnesses seek to inject the term into the Government's case at trial.

### IV. Omnibus Motion *in Limine*

In his omnibus motion *in limine*, Dr. Nikparvar-Fard seeks to preclude (1) fact witnesses from offering opinion testimony about matters requiring specialized knowledge, (2) the use of incomplete Pennsylvania Department of State investigation reports, and (3) the use of non-testifying co-defendants' proffers as rebuttal evidence. A discussion of each argument follows.

#### A. Preclusion of Fact Witnesses' Offering of Opinion Testimony About Matters Requiring Scientific, Technical, or Other Specialized Knowledge

Dr. Nikparvar-Fard requests that the Court preclude the Government's fact witnesses from offering opinion testimony about matters requiring scientific, technical, or other specialized knowledge. Rule 701 governs opinion testimony by lay witnesses. Fed. R. Evid. 701. If a witness is not designated as an expert, his or her testimony is limited to an opinion that is:

- (a) rationally based on the witness's perception;
- (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
- (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*Id.*

Dr. Nikparvar-Fard asserts that the Government intends to call numerous fact witnesses, including physicians, pharmacists, medical assistants, x-ray technicians, nurse practitioners, and other medical personnel. He argues that the content of the discovery suggests that fact witnesses may be called by the Government to testify as to the legitimacy of the AUC medical practice or

9

the appropriateness of any medical treatment, whether AUC's billing practices were accurate, or whether AUC's employment practices were legal.

Under Rule 701, neither the defense nor the Government may introduce opinion testimony of lay witnesses on scientific or technical matters. Although his concerns may be valid given the number of fact witnesses he anticipates having specialized knowledge in the field of medicine, Dr. Nikparvar-Fard fails to identify which fact witnesses he forecasts will testify improperly based on their specialized knowledge. This issue will more appropriately be addressed in the context of trial, based on the specific testimony of fact witnesses.

Dr. Nikparvar-Fard's motion *in limine* is therefore denied as it relates to the preclusion of fact witnesses' offering of opinion testimony about matters requiring scientific, technical, or other specialized knowledge, without prejudice to his raising objections to questions posed to fact witnesses during trial.

### B. Incomplete Pennsylvania Department of State Investigation Reports

Dr. Nikparvar-Fard next argues that the Government produced several investigation reports by the Pennsylvania Department of State, many of which listed attachments of relevant documents, including statements made by witnesses about AUC facilities. Despite his requests for all attachments to the produced reports, Dr. Nikparvar-Fard alleges that the Government was unable to produce all of the attachments, some of which have apparently not been maintained by the Pennsylvania Department of State. Specifically, the Government never provided attachments to Investigation Reports 14-49-11377-1, 15-53-08457-1, and 15-54-13748. However, Dr. Nikparvar-Fard does not articulate which rule of evidence mandates that these investigation reports be excluded. He also cites to no caselaw to support his argument. "The movant bears the burden

of demonstrating that the evidence is inadmissable [sic] on any relevant ground." *Leonard*, 981 F. Supp. 2d at 276. Dr. Nikparvar-Fard has failed to meet this burden.

The motion *in limine* is thus denied without prejudice as it relates to the exclusion of the incomplete Pennsylvania Department of Health investigation reports.

### C. Use of Non-Testifying Co-Defendants' Proffers as Rebuttal Evidence

Dr. Nikparvar-Fard argues that the Government should be precluded from using the proffers of his non-testifying co-defendants as rebuttal evidence. In its pretrial filings, the Government indicated that it would seek to use the content of the proffers at trial if a non-testifying co-defendant, via his counsel's argument or cross-examination, created an impression of fact contrary to the admission of the co-defendant in his proffer. *See* Gov.'s Mot. *in Limine* at 3, Doc. No. 381; Gov.'s Mot. *in Limine* at 4, Doc. No. 382. Dr. Nikparvar-Fard avers that any use of those proffers if his co-defendants do not testify is a violation of his Sixth Amendment rights.

The Supreme Court held in *Bruton v. United States*, 391 U.S. 123 (1968), that the admission of a non-testifying co-defendant's confession implicating the defendant's participation in the crime at a joint trial violated the defendant's Confrontation Clause rights, notwithstanding a court's limiting jury instructions. *Id.* at 126. However, "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Redactions that are essentially "obvious indication[s] of deletion, such as a blank space, the word 'deleted,' or a similar symbol" are insufficient. *Gray v. Maryland*, 523 U.S. 185, 192 (1998). That is because such unnuanced redactions will allow the jury to infer that the redacted confession of the co-defendant refers to the defendant. *Id.* at 193; *see also United States v. Hardwick*, 544 F.3d 565, 573 (3d Cir.

11

2008) ("Even redacted statements will present Confrontation Clause problems unless the redactions are so thorough that the statement must be linked to other evidence before it can incriminate the co-defendant.").

Dr. Nikparvar-Fard asserts, generally, that if a non-testifying co-defendant's proffer is admitted at trial, he will be robbed of his opportunity to cross-examine his co-defendant. He does not, however, claim that statements in the relevant proffers directly reference him or otherwise implicate him in the charged crimes. Although he contends that any limiting instructions issued to the jury regarding the co-defendant's statement would not cure his violated Sixth Amendment right, he does not make an argument as to whether proper redaction of the proffers would circumscribe the violation.

Neither the Court nor Dr. Nikparvar-Fard has a crystal ball, and it is not certain whether one of Dr. Nikparvar-Fard's co-defendants will contradict his proffer statement. Nor is it certain that such co-defendant will elect not to testify, or that the proffer statements directly reference Dr. Nikparvar-Fard. Only if all of these eventualities occur will *Bruton* issues be implicated. Given these unknowns, the issue is prematurely raised. *See United States v. Johnson*, No. 21-cr-39, 2022 WL 2953904, at *11 (W.D. Pa. July 26, 2022) ("Ultimately, if the Government intends to introduce statements at trial of a non-testifying co-Defendant that raises *Bruton* issues, the Court will presumably be able to ameliorate any Sixth Amendment concerns through proper redaction or, if necessary, precluding admission of the statement altogether.").

The Court therefore denies Dr. Nikparvar-Fard's motion *in limine* as to the Government's use of non-testifying co-defendants' proffers as rebuttal evidence, without prejudice to Dr. Nikparvar-Fard's raising objections during trial should his *Bruton* concerns materialize.

## CONCLUSION

For the foregoing reasons, the Court denies without prejudice the Motion *in Limine* to Preclude Use of the Term "Pill Mill," the Motion *in Limine* to Limit Expert Testimony to a Proper Testimonial Format and Opinions Disclosed in Accordance with Rule 16(a)(1)(G), and the Omnibus Motion *in Limine*. As to the Motion *in Limine* to Preclude (1) References to "Illegal" or "Criminal" Prescriptions and (2) the Term "Reasonable Medical Certainty," the Court grants the motion in part as it relates to the terms "illegal" or "criminal" prescriptions, and denies the motion in part as it relates to the use of the term "Reasonable Medical Certainty." An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE