IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MEHDI NIKPARVAR-FARD | : | |
| a/k/a "Mehdi Armani" | : | No. 18-101-1 |

**MEMORANDUM**

PRATTER, J.                                                                                          NOVEMBER 9, 2023

Mehdi Nikparvar-Fard pled guilty to one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a), 846. He now moves to withdraw that guilty plea. Prior to entry of his guilty plea on January 6, 2023, the Court engaged Defendant Nikparvar-Fard in person in a lengthy and comprehensive plea colloquy, which squarely covered every supposed basis for withdrawal that he now presents to the Court. In light of this colloquy, the Court also held a hearing on the withdrawal motion. Mehdi Nikparvar-Fard's testimony at the hearing on his motion to withdraw his guilty plea does not furnish a plausible, much less fair and just, reason for withdrawing his guilty plea. Thus, the Court denies his Motion.

BACKGROUND

Mehdi Nikparvar-Fard owned and operated four suburban Philadelphia Advanced Urgent Care ("AUC") facilities between January 10, 2014 and August 13, 2017. On March 18, 2018, he was charged in a one-count indictment and ultimately, on December 19, 2018, was arrested as a result of that indictment. A five-count superseding indictment was filed soon thereafter on January 9, 2019, charging Mehdi Nikparvar-Fard and 12 additional defendants with (1) maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Counts One to Four) and (2) conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count Five). The Government

1

alleges that these defendants issued illegal prescriptions for controlled substances that were not for a legitimate medical purpose.

Mehdi Nikparvar-Fard originally pled not guilty to all five counts of the superseding indictment. A review of the docket provides some sense of the law enforcement, prosecutorial efforts, defense activities, and judicial attention this defendant has garnered during the life of this case. He was scheduled to go to trial on Monday, January 9, 2023, along with his co-defendant Mitchell White. However, on Friday, January 6, 2023, Mehdi Nikparvar-Fard and his attorneys informed the Court that, after multiple discussions about evidentiary issues, trial risks, plea ramifications, and related matters, Defendant Nikparvar-Fard wished to plead guilty to Count Five of the superseding indictment. *See* Jan. 6, 2023 Change of Plea Hr'g Tr. (Doc. No. 595) [hereinafter "Change of Plea Hr'g Tr."] at 6:17–7:16, 10:24–11:19. According to the Guilty Plea Agreement into which Mehdi Nikparvar-Fard entered with the Government, the Government represented that it would move to dismiss Counts One through Four of the superseding indictment at sentencing. At the January hearing, Defendant was unimpaired by any substances, though he described himself as "depressed" and testified that his depression did not prevent him from thinking clearly. *Id.* at 22:12–21.

Because the negotiated plea agreement is a so-called "C" plea (meaning that if the Court ultimately does not adhere to the parties' agreed upon sentence, either party can withdraw from the agreement), at the plea hearing the Court repeatedly explained to Defendant that there were no guarantees the Court would accept the sentencing restrictions. Because the negotiated sentence range fell considerably below the likely applicable Guidelines, the Court expressed grave reservations about the plea deal. After a comprehensive plea colloquy with the defendant, the Court accepted his guilty plea, again, recognizing that it only remained to be seen whether the one

remaining contingency, namely the Court's evaluation of the negotiated sentence range, would alter the parties' agreement. *Id.* at 57:9–58:21. During that colloquy, attended by his three lawyers, Mehdi Nikparvar-Fard testified under oath that he was pleading guilty to Count Five of the superseding indictment—conspiracy to distribute a controlled substance—because he was in fact guilty of that crime. *Id.* at 56:19-57:4. He had been made aware of the Court's likely inquiries in advance of the hearing so he would not be surprised by the questions to be answered. *Id.* at 14:6–7. After hearing the Government's recitation of the factual basis for his guilty plea, the defendant declined to describe the facts differently from the Government at that time, though the Court offered him the opportunity to do so. *Id.* at 42:6–45:7. The Court also prodded Defendant as to any other reservations or hesitation he may have been harboring. None were disclosed by him or by counsel.

The factual basis for the guilty plea with which Mehdi Nikparvar-Fard agreed included facts demonstrating his knowledge or intent regarding his criminal conduct. *Id.* at 42:13–23. Specifically, the defendant agreed that he both knew that "H.C.," an employee at Defendant's clinic, could not issue legitimate prescriptions for controlled substances and that he nonetheless agreed with several others to provide "H.C." with pre-signed prescription pads. *Id.* at 42:13–19. Moreover, he agreed that this course of conduct was taken "outside the usual course of professional practice and not for a legitimate medical purpose." *Id.* at 42:21–23, 43:20–22. Mehdi Nikparvar-Fard affirmed his actual guilt pursuant to these specific facts at least seven separate times during the hearing. *Id.* at 43:20–44:5, 54:1–4, 56:22–24, 57:3–4. Finally, after a lengthy colloquy, the Court specifically found that Defendant Nikparvar-Fard had admitted to the Government's factual basis, which proved the essential elements of his crime, and that he understood the charges against

him. *Id.* at 58:5–11. The charge to which he pled guilty includes a knowledge or intent element. *See* 21 U.S.C. § 841(a).

In addition, during the plea hearing the defendant confirmed that he read, understood, and then signed the Guilty Plea Agreement and Acknowledgment of Rights; he vowed that his plea was voluntary and not a result of any threats or intimidation; he stated he knew he could go to trial to dispute the charges and challenge the Government's case; he said he knew that at trial he could present testimonial and documentary evidence, including his own testimony. *Id.* at 31:3–36:12.

On Friday, January 24, 2023, the jury in the trial of Mehdi Nikparvar-Fard's co-defendant, Mitchell White, a low-level employee at Defendant's clinics, returned a not guilty verdict as to the charges of maintaining a drug-involved premises. The jury was unable to reach a verdict as to the charge of conspiracy to distribute a controlled substance, and the Court declared a mistrial as to that charge. Two days later, after the verdict was announced, Mehdi Nikparvar-Fard filed his first motion to withdraw his guilty plea. The Court allowed Mehdi Nikparvar-Fard's prior counsel to withdraw from the representation, appointed new counsel, and denied without prejudice Defendant Nikparvar-Fard's pro se motion to withdraw his guilty plea, pending the input of new defense counsel. The defense then filed the present Motion to Withdraw Plea of Guilty, and the Court held an evidentiary hearing on the Motion on September 19, 2023.

Mehdi Nikparvar-Fard was the sole witness at that evidentiary hearing. The upshot of Defendant's explanation of why he wished to withdraw his plea focuses on his desire to excuse his conduct on the strength of his interpretation of earlier publications that he contends outline conduct he employed at his Clinics, but which publications he says his prior lawyers told him would not be admitted at a trial. Only Defendant testified as to these lawyer-client discussions about trial

4

evidence, and that testimony was not clear as to what the lawyers may or may not have expressed in general or as to specifics.

He testified that the issuance of prescriptions to "H.C." was in accordance with a "protocol" that he believed was appropriate because it was "what [his] books told [him] to do." Sept. 19, 2023 Mot. Hr'g Tr. (Doc. No. 647) [hereinafter "Mot. Hr'g Tr."] at 15:11–16:12. Defendant Nikparvar-Fard then proceeded to read passages from several medical texts upon which he claimed he relied in developing this "protocol." *See id.* at 16:20–28:14. Following his testimony about these medical texts, the Defendant testified that his previous lawyers had informed him that all of these medical texts would be inadmissible at trial. *Id.* at 33:24–34:4. In order to demonstrate that his former counsel had in fact given him that advice, Defendant Nikparvar-Fard relied upon an email from one of his former lawyers that stated in part, "much of what you expect to do is inadmissible." *Id.* at 35:9–37:9. Defendant testified that he pled guilty in reliance upon his interpretation of this information because he says he believed that he would not be able to use these medical texts in his defense. *Id.* at 34:5–21.

### LEGAL STANDARD

Pleading guilty "is a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). A district court exercises that care and discernment by accepting a guilty plea only after conducting a Rule 11 plea colloquy with the defendant, who may be placed under oath and must be addressed personally in open court. *See* Fed. R. Crim. P. 11(b). This colloquy ensures that the guilty plea is indeed "the voluntary expression of [the defendant's] own choice." *See Brady*, 397 U.S. at 748; Fed. R. Crim. P. 11(b)(2). After a Rule 11 colloquy, "a defendant has no reason to believe he can freely withdraw his plea," because he has admitted his guilt and the facts relating to his crime and has "been advised by the

court of the consequences of pleading guilty." *United States v. Rivera*, 62 F.4th 778, 787 (3d Cir. 2023) (quoting *United States v. Byrum*, 567 F.3d 1255, 1261 (10th Cir. 2009)).

Nonetheless, after the Court accepts a guilty plea, but before sentencing, a defendant may withdraw his plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, "a shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already" solemnly admitted his guilt. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (quoting *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). The defendant thus "bears a substantial burden of showing a fair and just reason for the withdrawal of his plea." *Rivera*, 62 F.4th at 788 (quoting *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011)).

To determine whether the reasons for withdrawal are fair and just, a court "must consider three factors: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* (quoting *Jones*, 336 F.3d at 252) (cleaned up). The mere assertion of innocence is not enough; the assertion "must be buttressed by facts in the record that support a claimed defense." *United States v. Kwasnik*, 55 F.4th 212, 217 (3d Cir. 2022) (quoting *Brown*, 250 F.3d at 818). Moreover, a defendant "must 'give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea.'" *Id.* (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded on other grounds by United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999)). If a defendant fails to meet his burden under factors one and two, the Government does not need to demonstrate prejudice

under factor three. *United States v. Fuller*, 311 Fed.Appx. 550, 552 (3d Cir. 2009) (citing *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995)).

## DISCUSSION

After years of active defense against serious criminal charges, approximately 72 hours before trial was set to start, and after extensive discussions with his lawyers, Mehdi Nikparvar-Fard voluntarily pled guilty in open court on January 6, 2023. He does not dispute either that he admitted his guilt and the factual basis for it, or that the Court thoroughly advised him of the consequences of pleading guilty. Nonetheless, he now requests that the Court allow him to withdraw his guilty plea. The Court declines to do so.

First and foremost, Mehdi Nikparvar-Fard's utter lack of credibility is central to the Court's analysis of his Motion. Simply put, his account of why he pled guilty, but now seeks to withdraw his guilty plea, is not at all convincing. Having experienced the whole of Mehdi Nikparvar-Fard's criminal case in this matter and observed him for many years, the Court finds that he was not a credible witness at the hearing on his Motion to withdraw his guilty plea. He demonstrated no appreciation for the significance of taking an oath. The only undisputed conclusion that the Court draws from Defendant's presentations is that he is still convinced (as he has displayed throughout the case) that he knows more about the law and the conduct of trials than do any of his lawyers, the lawyers for the Government, or the Court. Accordingly, the Court affords his testimony very little weight.

To be sure, Mehdi Nikparvar-Fard offers several arguments in favor of withdrawal of his guilty plea, none of which, however, furnishes a fair and just reason for the withdrawal. First, Mehdi Nikparvar-Fard asserts that he is factually innocent because he claims to have had a good faith belief in the legality of his actions, which, he says, negates the knowledge or intent element of his crime. However, during the January 6, 2023, Rule 11 colloquy, Mehdi Nikparvar-Fard

7

repeatedly testified under oath that he acted with knowledge and intent; and he was given an opportunity to clarify the factual basis for the conviction, which would have allowed him to address the knowledge and intent issues, and which he declined. Change of Plea Hr'g Tr. at 43:20–44:21, 54:1–4, 56:22–24, 57:3–4.

Second, he argues that his prior counsel furnished "constitutionally deficient advice" by informing him that he could not offer evidence of this good faith belief at trial. Mot. to Withdraw Plea of Guilty (Doc. No. 634), at 16. Specifically, prior counsel reportedly told Defendant that the medical textbooks and treatises which he says informed his good faith belief in the legality of his actions would be inadmissible at trial. Additionally, Defendant Nikparvar-Fard avers that his lawyers threatened to withdraw from the representation unless he pled guilty—a threat which allegedly arose after Mehdi Nikparvar-Fard informed his lawyers that he could not pay a $190,000 "trial fee" one week before trial. *Id.* at 18. However, during the Rule 11 colloquy, Mehdi Nikparvar-Fard testified under oath that he had sufficiently discussed his case with his attorneys and was satisfied with their advice. Change of Plea Hr'g Tr. at 23:15–20. He said he was not threatened or coerced into pleading guilty. His attorneys also testified to their confidence in the knowledgeable voluntariness of the plea. *Id.* at 54:22–55:23.

In sum, Mehdi Nikparvar-Fard has taken diametrically contradictory positions on fundamental matters before this Court. He has not sufficiently explained those contradictions. Accordingly, having voluntarily, knowledgeably, and solemnly declared his own guilt, the Court declines to allow Mehdi Nikparvar-Fard to withdraw his guilty plea now that he has seen his former employee achieve a not guilty verdict.

I. **Mehdi Nikparvar-Fard has not offered a fair and just reason for withdrawing his guilty plea.**

Mehdi Nikparvar-Fard argues that he is factually innocent because he did not act with the requisite knowledge or intent to be convicted under 21 U.S.C. § 841(a). To succeed on this argument, he must demonstrate that his assertion of innocence is "buttressed by facts in the record that support a claimed defense." *Kwasnik*, 55 F.4th at 217. Mehdi Nikparvar-Fard points to three pieces of proposed evidence: (1) several medical texts that putatively endorse the protocol he devised for the dispensation of pain medication; (2) the grand jury testimony of another clinic physician, who did not believe the protocol was illegal; and (3) the notion that the defendant believes the Government's expert—Dr. Stephen Thomas—previously testified in a different case that an arguably analogous practice was not criminal.

All of this medical text and other material existed and was available when Mehdi Nikparvar-Fard decided to plead guilty in January of this year. *Cf. id.* (rejecting withdrawal of guilty plea where "the evidence [the Defendant] claimed was newly discovered was the same stuff that he has been preaching about for years") (cleaned up). Mehdi Nikparvar-Fard was advised by the Court of his constitutional right to place that evidence in front of a jury and testified that he understood his trial rights. Change of Plea Hr'g Tr. at 34:3–38:4. He then waived those rights. *Id.* at 41:3–8. He now asserts that this evidence shows he lacked the requisite knowledge or intent to prescribe medication in an unauthorized manner, but he has failed to explain why he now contradicts his sworn testimony that he *did* have the requisite knowledge or intent to prescribe medication in an unauthorized manner. In order to withdraw his guilty plea, he must explain this contradiction. *Id.* ("a defendant seeking to withdraw his guilty plea must 'give sufficient reasons to explain why contradictory positions were taken before the district court'") (quoting *Jones*, 979 F.2d at 318).

This requirement leads to the next element of Mehdi Nikparvar-Fard's latest story: his previous lawyers' allegedly deficient conduct. The Third Circuit Court of Appeals has explained that ineffective assistance of counsel can furnish a reason for the withdrawal of a guilty plea. *See United States v. Kraynak*, No. 22-2500, 2023 WL 4636419, at *2 (3d Cir. July 20, 2023). However, just like the defendant in *Kraynak*, skipping over the problem that Defendant has not actually explained with clarity what counsel's "advice" really was specifically, Mehdi Nikparvar-Fard has not shown "that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms." *Id.* (quoting *United States v. James*, 928 F.3d 247, 258 (3d Cir. 2019)). In affirming the rejection of Dr. Kraynak's motion to withdraw his guilty plea, the Third Circuit Court of Appeals pointed out that Dr. Kraynak testified under oath to being satisfied with his lawyers and that those lawyers testified "they . . . did not pressure Kraynak to plead." *Id.* Similarly, here, Mehdi Nikparvar-Fard testified under oath to being satisfied with his lawyers, Change of Plea Hr'g Tr. at 23:18–20, and his lawyers testified that their client pled knowingly and voluntarily, *id.* at 54:22–55:23. Notwithstanding his sworn testimony, Mehdi Nikparvar-Fard now avers that his prior counsel forced him to plead guilty after he informed them that he could not pay a $190,000 fee. Although Mehdi Nikparvar-Fard has certainly managed to contradict his sworn testimony with these averments, he has not convincingly explained the contradiction. *Cf. Jones*, 336 F.3d at 253 ("At the December 4 hearing, Jones listened to the Government's recitation of the material facts underlying his offenses and conceded the accuracy of those facts. Jones then denied those facts at the May 22 hearing, but did not explain why his position had changed so markedly").

In fact, Mehdi Nikparvar-Fard has not even demonstrated what his attorneys' allegedly deficient advice was. He proposes to demonstrate the constitutional deficiency of his counsel through: (a) one ambiguous line of an email from one of his former lawyers, which itself

constitutes hearsay; (b) self-serving personal testimony about the meaning of that ambiguous line; and (c) a stack of medical literature upon which he allegedly relied when creating a protocol for dispensing drugs.

On Thursday, January 5, 2023—the day before Mehdi Nikparvar-Fard pled guilty—his lawyer apparently sent him an email, which states in part: "I tell you that much of what you expect to do is inadmissible and you don't accept my or my co-counsel's opinion." Defense Exhibit 16A; *see also* Mot. Hr'g Tr. at 33:10–34:4, 35:3–10, 80:4–21. During the hearing on the present Motion, Mehdi Nikparvar-Fard proposed to interpret the phrase, "much of what you expect to do," in his attorney's email as referring to the medical literature upon which he allegedly relied when creating a protocol for dispensing drugs. Mot. Hr'g Tr. at 37:2–9. However, as an initial matter, the Court sustained the Government's objection to Mehdi Nikparvar-Fard's interpretation of his attorney's statement as hearsay to the extent the email text was supposed to demonstrate what the advice on point was. *Id.* at 29:10–13. Second, to the extent that he testified to the meaning of his attorney's out-of-court statement, the Court does not find Mehdi Nikparvar-Fard's self-serving interpretation of this cherry-picked hearsay to be credible.[1] Thus, he has not demonstrated that counsel ineffectively or deficiently advised him.

Mehdi Nikparvar-Fard also advances a related, but arguably distinct, explanation for contradicting his January guilty plea by seizing on one of his responses during the Rule 11 colloquy. When the Court gave Mehdi Nikparvar-Fard the opportunity to describe the factual basis for his guilty plea differently from the Government's description, he said: "I would talk about that

---

[1] Mehdi Nikparvar-Fard's unexplained attachment of invoices, fee agreements, and additional emails to the email upon which he relies does not bolster his credibility. *See* Mot. Hr'g Tr. at 30:21–32:21. These attachments merely underscore the Court's impression that the relied-upon statement has been selected from its larger context in order to support a dubious theory of ineffective assistance.

11

at the time of sentence [sic]." Change of Plea Hr'g Tr. at 44:15–16. At the hearing on his Motion to withdraw his guilty plea, Mehdi Nikparvar-Fard explained what he claims he meant: "I refused to give explanation at that time because I was preparing to give those at my sentencing, including all of my literature. To common sense, well, I know that these are not admissible, but this is what I thought I would do in court." Mot. Hr'g Tr. at 57:21–23. In other words, Mehdi Nikparvar-Fard appears to have settled on a strategy as of January 6: he would appeal to "common sense" at sentencing instead of contesting the fact of his knowledge or intent at a trial. This pattern of routinely believing that he knew better than all of his many lawyers is a familiar one where this defendant is concerned. Apparently, he decided that he would place medical literature that would, he assumes, support his claim of good faith belief in the supposed legality of his actions before the Court at sentencing. However, "a shift in defense tactics" is not an adequate reason "to impose on the government the expense, difficulty, and risk of trying a defendant who has already" solemnly admitted his guilt. *Jones*, 336 F.3d at 252 (quoting *Brown*, 250 F.3d at 815). Instead of putting evidence of his supposed good faith in front of the Court at sentencing, Mehdi Nikparvar-Fard changed his mind and decided to try and put that evidence in front of a jury after all. This tactical choice fails to sufficiently explain the contradictory positions that Mehdi Nikparvar-Fard has taken under oath before this Court.

Finally, Mehdi Nikparvar-Fard repeatedly cites to *United States v. Ruan*, 142 S.Ct 2370 (2022), for the proposition that the Government must prove he acted with knowledge or intent. However, despite Defendant Nikparvar-Fard's repeated citations of *Ruan*, that case does not assist him with respect to his Motion. In *Ruan*, the Supreme Court held that, in a 21 U.S.C. § 841 prosecution, the Government must prove that a defendant "knowingly or intentionally acted in an unauthorized manner." *Ruan*, 142 S.Ct. at 2382. However, that is precisely what Mehdi Nikparvar-

Fard pled guilty to on January 6. The factual basis for Defendant Nikparvar-Fard's guilty plea, with which he agreed no less than seven separate times, specifically included that he: (1) knew his employee could not issue legitimate prescriptions; (2) agreed to provide that employee with pre-signed prescription pads anyway; and (3) undertook this course of action "outside the usual course of professional practice and not for a legitimate medical purpose." Change of Plea Hr'g Tr. at 42:10–23. Although under *Ruan* the Government would have needed to prove Mehdi Nikparvar-Fard's knowledge or intent to act in an unauthorized manner beyond a reasonable doubt at trial, this need was vitiated by the guilty plea.

The distinct and decisive issue in disposing of the presently pending Motion is that Mehdi Nikparvar-Fard has failed to explain why it would be fair and just for the Court to credit his contradictions of his guilty plea. This leaves the only remaining explanation for this Defendant's 180-degree switch: his co-defendant's acquittal by a jury after a trial. Of course, that is no justification at all. Because the Court finds that Mehdi Nikparvar-Fard has not met his substantial burden of demonstrating a fair and just reason for withdrawing his guilty plea, it need not weigh whether the Government would be prejudiced by withdrawal. *Fuller*, 311 Fed.Appx. at 552 (citing *Harris*, 44 F.3d at 1210).

## CONCLUSION

For the foregoing reasons, the Motion to Withdraw Plea of Guilty is denied. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE